Alphonso Haworth et al. v. Fannie M. Norris.—Syllabus.

ALPHONSO HAWORTH ET AL., APPELLANTS, VS. FAN-
NIE M. NORRIS ET AL., APPELLEES.

1. In civil actions, other than divorce cases, as the law stood in this
State after the legislation of January 29, 1885 (Chapter 3582 of
the Statutes), and before the act of June 4, 1891 (Chapter 4029
of the Statutes). a husband was, on account of the marital re-
lation, not a competent witness either for or against his wife,
but the wife was a competent witness for or against her hus-
band in a case where he was a party and could himself testify;
and the disqualification of the husband, as such, to testify for
or against his wife did not of itself disqualify him from testify-
ing as to his own interest where they were both parties, nor did
such relation disqualify her from testifying as to her interest
in the case.

2. Neither a father nor a mother is disqualified by the parental rela-
tion as a witness for or against a son.

3. Delivery to a third party is essential to an escrow.

4. Parol evidence is admissible to prove that a deed was never de-
livered to the grantee, or that it came into his possession acci-
dentally or by mistake, or contrary to the intention of the par-
ties, or by fraud or otherwise illegally ; but it is not admissible
to show that an actual delivery to the grantee of a deed abso-
lute upon its face was made under any agreement that a condi-
tion not expressed in the deed should be performed, and that
the deed should not be operative until or unless such condition
should be performed ; the reason of such inadmissibility of
parol evidence is that its effect would be to contradict a written
instrument absolute upon its face by showing contrary to its
terms that it was not absolute but conditional.

5. A bill in equity to remove a cloud upon title to land cannot be sustained when the evidence shows that the land was at the time the bill was filed in the possession of the party complained of and claiming to hold under the deeds constituting the cloud. The remedy is at law.

Appeal from the Circuit Court for Duval county.

STATEMENT.

The bill in this cause was filed October 15th, 1885. The complainants are Eli Haworth and his wife and Alphonso Haworth, their son, and its material allegations are in substance as follows:

1. That on October 26th, 1877, Eli and his wife, at the solicitation of the defendant, Emma Reed, then Emma Livingston, she having subsequently intermarried with the defendant, Henry W. Reed, executed to said Emma a deed of a described five acres of land, situate in Duval county, and being part of the Davies Grant, previously owned in common by said Eli and one Keeler, and subdivided in 1875, and that in consideration of such deed to said land, if the same should be thereafter joined in and adopted by Alphonso, the said Emma covenanted and agreed to pay to complainants five hundred dollars and to teach Alphonso in the English branches until he should acquire a fair English education. That previous to making this deed to Emma, the complainant, Eli, on September 20th, 1875, he then being the owner of said land, made a deed of

the same to Alphonso, in which deed the said Ann did not join, but she retained her dower interest in the land ; and that this deed was not recorded until February 19th, 1878, but was shown to the said Emma and she was fully informed of its contents at the time of the execution of the deed to her. That Emma represented to Eli and Ann that she could get the money which she had agreed to pay to them for said land from her father, whom she represented as then being in the State of Illinois, but that she wanted the deed made to her as aforesaid to show to her father to induce him to advance the said money, and that for that purpose alone, and before the consideration had been paid or performed, Eli and Ann delivered the deed to Emma, but she could not and did not obtain the said money from her father, and was aware that she could not at the time she made said promise and statement, and that she never has paid the consideration or performed the part thereof to be performed in services, but utterly failed and refused so to do, although requested so to do by Eli and Ann. That the said Emma, although she promised to return said deed to complainants if the said funds were not procured from her father and paid to "your orator and oratrix" as aforesaid, yet she did not return, but refused to return the deed "to your orator and oratrix," and contrary to the agreement on which it was given to her, and without ever paying or performing the consideration for the same, she had

and procured the deed to be recorded in the records of said county, and undertook to claim title to the said land under the deed thus obtained by fraud, deception and misrepresentation, although she was never in possession of said land.

2. That on April 11th, 1885, the said Emma and her husband Henry, a defendant, in pursuance of said design to defraud your orator and oratrix, and to assert title under said fraudulent deed, made and executed, for some small insignificant sum, the exact amount being unknown, but greatly less than the value of the land, to the defendant Fannie M. Norris, wife of Caius S. Norris, a deed of said land, and Norris and wife took the title and deed with full knowledge of the above-mentioned fraud and misrepresentation of said Emma in procuring and recording the deed to her, and also with full knowledge of the right and title of Alphonso in the premises.

3. That none of the defendants have ever had the possession or control of said lands, but Alphonso was in possession of the same at the time the deed was made to said Emma, and has been ever since, and is now, in possession thereof.

4. That Alphonso was ready and willing at the time of the making of the deed by Eli and Ann to confirm and adopt said transaction, and make a deed of said land to said Emma if she would carry out in good faith her said contract of purchase, but she has utterly and entirely failed so to do, and never intended so to do, but

made said promise and covenant solely for the purpose of getting into her possession the deed as aforesaid.

5. That your orator and oratrix frequently notified Norris and his wife of the fraudulent character of the deed held by Emma and how she had obtained the same, before the pretended purchase by said Fannie, which pretended purchase is charged to be but a part of a common design between all of the defendants to use and claim title under said deed obtained by fraud and deception, and without consideration as aforesaid.

6. That the name of Fannie M. Norris is inserted in the deed from Emma, but as your orator and oratrix are informed and believe, and so charge, the alleged purchase was made by Caius and for his benefit, and that he has informed your orator and oratrix since the date of said deed that he claimed the right and title to said land under said deed.

7. That Norris and his wife are going upon and trespassing upon the said land and cutting the wood and timber from the same, and are now attempting to carry off the wood and timber heretofore cut by them, and although warned not to further trespass upon the land or cut timber or wood from the same, still continue so to do. That the wood and timber on the land constitute a large part of its value, and such value will be greatly lessened by such cutting and removal. That defendants are asserting to the public that they claim the title to the land and are thereby injuring

768          SUPREME COURT.

Alphonso Haworth et al. v. Fannie M. Norris.—Statement of Case.

complainants' title thereto and depreciating its value and preventing any sale of the same by "your orators and oratrix," and the said deeds upon the records cast a cloud upon the title of "your orator and oratrix."

8. That the defendant Fannie being a married woman cannot be sued at law, and that no judgment obtained at law against her husband Caius can be made and collected by an execution issued out of a court of law against him.

9. The prayer of the bill is for an injunction restraining defendants from claiming or asserting title to or bringing suit for the land under the said deeds, and from going on or trespassing upon the same, and from conveying or incumbering the same, and for a surrender of such deeds for cancellation by any of the defendants having the same, and for general relief and subpœna.

On the day the bill was filed a temporary injunction in accordance with the prayer of the bill was issued, the same having been served on Norris and wife on the 17th day of the same month.

On the 7th day of December, Reed and wife answered the bill, stating that the deed from Haworth and wife to said Emma was executed on the 27th of October, 1877, and recorded on November 19th, following.

She answering of her own knowledge, and her husband on information and belief, states the facts and circumstances as to the execution of the deed to be as follows:

That several weeks before the deed was executed to her she had "refugeed" from Jacksonville, Fla., where she then temporarily resided, for the benefit of her health, to the beach below Mayport, in said county, as the yellow fever was then prevailing or supposed to prevail in Jacksonville. That she boarded a few weeks at the Atlantic House, on said beach, and meeting said Eli and Ann, she was prevailed upon to leave said house, at that time especially exposed to equinoctial storms, and take board at the residence of the said Eli at the old Pablo Plantation, in said county. While there, the said Eli having been attracted by certain letters written by her from Palatka, St. Augustine and Jacksonville, in this State, respecting Florida, its climate and other advantages, and published the preceding winter and summer in the Cairo, Ill., and St. Louis, Mo., newspapers, he proposed to her to write a single article for the purpose of calling attention to the lots of land lying along the beach below Mayport, owned and claimed by the said Eli, who in that connection referred to a newspaper correspondent, who, as the said Eli said, had previously published an article respecting the landed possessions of the said Eli, to whom for his services aforesaid he, the said Eli, had conveyed

a lot of land on the said beach, and the said Eli offered to defendant, Emma, if she would write an article on that vein, to make a conveyance to her of a lot of five acres of land of his premises removed from the beach as might be preferred by her. That the proposition was thereupon accepted by her and she thereupon prepared an article which was subsequently published in the Semi-Tropical, a periodical then published in Jacksonville, and which was satisfactory to Eli and Ann, and they thereupon cheerfully and without solicitation on her part, and in execution of said agreement, executed and delivered to her the deed of conveyance, which she accepted in full satisfaction and execution of said agreement to convey, and there was no other consideration for said land paid or performed or agreed upon.

That there was no condition whatever, expressed or implied, annexed to said deed, nor was there any provision that the said Alphonso should then or subsequently join in or otherwise assent to its execution, but the deed was delivered to her absolutely and unconditionally, and the statement in the bill as to Alphonso joining in the execution of the deed is untrue and an afterthought.

That so far from Alphonso's then asserting any claim to the lands so conveyed to said Emma, or any right or power to control a conveyance of the same, the said Eli and Ann on the day the deed was executed to said Emma, executed in the presence of the wit-

nesses who attested this deed, and acknowledged before the officer who took and certified the acknowledgment of the same, a deed of conveyance to the said Alphonso, and this deed to him refers to and bounds on one side the premises so conveyed to him by the premises so conveyed to said Emma, and said deeds were duly recorded in the proper office of said county, that to Alphonso immediately following that to Emma. Certified copies of these deeds are annexed to the answer as part thereof.

That the transactions resulting in the deed to Emma were in all respects fair, free from fraud, indirection and misrepresentation on the part of Emma, and were fully understood in all their parts by all the parties thereto at the time they were so consummated in the execution of said deed.

That shortly after the deed to Emma and the said deed to Alphonso were executed as hereinbefore shown, Alphonso went with Emma to said land and pointed out said lands and the boundaries which separated the land of Emma from those so conveyed to Alphonso, and he was then and there exhuberant in expressions of satisfaction that his father had executed the said deed to him.

That, as they are advised and believe, the lands conveyed to said Emma could not at the time of such conveyance have been sold for more than ten dollars per acre, and said Emma avers that she would not at the

time have paid in cash fifty dollars for the same, and she avers of her own knowledge that the consideration of fifty dollars was inserted in said deed solely at the instance of said Eli, without any suggestion whatever from the said Emma, she supposing that the service rendered him as hereinbefore shown was valued by him at that sum.

The answer responds expressly to all allegations of the bill inconsistent with the above defense, and in effect denies or traverses all of them and the whole case made by the bill. It also states that the respondents supposed they were in possession of said land so sold to said Emma, the said Emma down to the time of her marriage in May, 1880, and these respondents since that time to the date of their deed to said Fannie Norris. That on the 11th day of May they sold and conveyed said land by deed duly executed and recorded to said Fannie for the sum of $150, which was duly paid, and was the fair and full value of said land. That the lands had been in market for several years before, and the highest bid was made on behalf of Mrs. Norris, to whom it was sold, and that in making such sale no thought or reference to the complainants was entertained, nor any suspicion that their deed would be assailed.

That said Emma resided to the time of her marriage, since said sale to her, in the State of Florida, and since

her marriage, in Waycross, Georgia. She also affirms her solvency.

The answer of Caius S. Norris and his wife Fannie practically adopts upon information and belief that of Reed and wife, stating, however, that they understood up to the institution of this suit that the consideration for the deed to Mrs. Reed was fifty dollars, as expressed therein, and that it had been paid, and that they never knew anything to the contrary until hearing the bill read, and avering that the value of the land was at the execution of said deed not more than ten dollars per acre. That not until October 13th, 1885, and upon sundry threats being made by said Eli to Caius, did they hear of any claim adverse to the title of said Emma. That some time after the execution of the deed to said Emma they heard some indefinite rumors as to the said Alphonso having a deed from the said Eli, other than that executed October 27th, 1877, and thereupon Caius went to the county records and made diligent search for the rumored deed, but was unable to find any record of a deed to Alphonso than that of the deed of October 27th, and that excepting such indefinite rumor, respondents never heard of the alleged deed of September 17th, 1885, until hearing the bill in this cause read. That so far from suspecting that Alphonso had any claim to said land, they, upon the land being conveyed to said Fannie, went to Alphonso in person, and told him of the purchase and asked him if he knew where

the boundaries to the Livingston tract were, and Alphonso answered that he did not know exactly where the boundaries were, as they had never been run by a surveyor, but that any one who could run a line with a compass could find the boundaries; that he owned the balance of the lot of which the Livingston tract was a part, for which his father had executed to him a deed on the day the Livingston tract was deeded to said Emma, and further said that one Scull was enough of a surveyor to run the said lines and that he, Alphonso, was too busy with spring planting to meet said Norris and Scull and run the lines, which could be run without his assistance, and that defendants had a fine piece of land in the Livingston tract.

They admit that on April 11th, 1885, Reed and wife conveyed the land to said Fannie, but deny that there was any design on the part of the co-defendants or either of them to defraud complainants, and each and every allegation of the bill to the effect that respondents or either of them has been or is aware of any fraud, deception or misrepresentation on the part of said Emma or her husband. They say the conveyance was fair in every respect, and that the consideration was $150 cash paid to Reed and wife, and that this was the fair and full money value of the land.

There are other features of the answer, some of

which, as far as they are material to the case, will be noticed in the opinion.

The other facts in the case are stated in the opinion.

*C. P. & J. C. Cooper* for Appellants.

*A. W. Cockrell & Son* for Appellees.

RANEY, C. J. :

The defendants objected before the master who took the testimony, to the competency of Eli Haworth and his wife, two of the complainants, as witnesses in support of the case made by the bill, on the ground of their marital relation, and the circuit judge sustained the objections and excluded their evidence. The correctness of this ruling is assailed by counsel for appellants.

The statutes in force at the time of the ruling complained of, are those of February 4th, 1874, and March 7th, 1879, and January 29th, 1885. The first of these (sec. 24, p. 518 McClellan's Digest), provides that no person offered as a witness in any court or before any officer acting judicially, shall be excluded by reason of his interest in the event of the action of proceeding, or because he is a party thereto. There is a proviso, but it need not be noticed as the case before us does not fall within any exception made by it to the general

rule removing the disqualification of interest or parties. The second act (sec. 23, p. 517 *Ibid*), is as follows: In the trial of civil actions in this State married women shall not be excluded as witnesses in cases where their husbands are parties and allowed to testify. The third act (Chapter 3582, p. 24, Statutes of 1885) is, that in all actions for divorce or alimony in this State it shall be competent for the parties to testify, but no decree is to be granted upon the testimony of husband or wife alone. The legislation of the present year (Chapter 4029, p. 56 Statutes of 1891) cannot be considered.

In McGill vs. McGill, 19 Fla., 341, a divorce case decided in 1882, it was held that the common law exclusion of a husband or wife as witnesses to affect the rights or interests of the other was not solely on grounds of property interest, but on ground of public policy for the protection of the marriage relation, and that the statutes then in force, those of 1874 and 1879 *supra*, did not change the common law excluding husband and wife from testifying in a suit for divorce. It is, however, observed in the opinion, and in our opinion correctly, that these statutes innovate upon the rule of the common law, to the extent that interest in the event of an action, or merely being a party, shall no longer exclude a witness from testifying, and that in civil actions married women are not excluded in cases where their husbands are competent witnesses.

In Schnabel and wife vs. Betts, 23 Fla., 178, and in Storrs *et al.* vs. Stoors, *Ibid*, 274, the competency of the husband to testify in a civil action to which the wife was a party was before the court. The former case is one in which it was sought to charge the separate real property of Mrs. Schnabel with the value of improvements erected on it, and it was held that the statute of 1879 did not so modify the common law as to extend to the husband the right to testify for or against a wife in a civil suit against her. The Storrs case is one in which the wife, by her next friend, filed a bill against her husband and his judgment creditor, to protect her alleged separate property from sale in satisfaction of the judgment, and it was decided, overruling the lower court, that the husband was not a competent witness to prove that the property levied on was hers.

The true principles of the common law as disqualifying either a husband or wife as a witness where the other is a party to or interested in the event of the suit, is not the interest of the one offered as a witness in the event of the suit, but is public policy founded on the preservation and peace of the marriage relation; Hasbrouck vs. Vandervoort, 9 N. Y., (5 Selden), 153; Lucas vs. Brooks, 18 Wall., 436; Wharton's Law of Evidence, sec. 430; and hence the removal of the disqualification of interest or of being a party to a suit does not affect the disqualification of husband or

wife as a witness to a suit in which the other is interested or a party.

Our law-making power had seen fit to provide by the act of 1874 that neither interest in the result, nor being a party to the suit should, in cases not within its proviso, disqualify any person as a witness, and hence, if a husband was a party he was not disqualified from testifying as to his own interest, even though his wife were a party, but he could not testify as to her interest if she was a party or interested in the result, and likewise, under this act, if a wife was a party or interested in the result she could testify as to her own interest, (Williams vs. J. T. & K. W. R. Co., 26 Fla., ——, 8 South. Rep., 446,) but it did not extend to her any competency in excess of that given to a husband. The act of 1879, however, did extend to her additional competency; it says that wherever the husband is a party and allowed to testify the wife shall not be excluded as a witness. The purpose of this act was to remove the common law disability as wife which at the time of its enactment remained unaffected by prior legislation; so wherever the husband was a party to a suit, and its character was such that his interest therein or connection with the suit would, under the act of 1874, not disqualify him from testifying as to his interest, his wife ceased, by virtue of the act of 1879, to be disqualified as wife, or on grounds of public policy, from testifying as to his interests. Of course where the character of the case was one falling within the exceptions named in the

proviso to the act of 1874, and the husband, though a party, could not testify, the public policy disqualification referred to adhered to the wife and prevented her from testifying as to his interests. The act of 1879 does not in any manner affect the competency or incompetency of the husband as a witness. Schnabel and wife vs. Betts, *supra*. The act of 1885 has made a special rule for cases of divorce or alimony, and has done away with the public policy disqualification of both husband and wife to testify in those cases; and more need not be said of it here as the cause before us is not within its scope. This was the status of the law at the time of the trial of this cause.

Proceeding to apply these principles, we see that the case before us is one in which the husband, Eli T. Haworth, has upon the face of the bill, no interest in the *land* in controversy. In 1875 he, according to the bill, conveyed to his son Alphonso his entire interest therein, and as between himself and his son the deed by his wife and himself of October 27th, 1877, to Miss Livingston was of no effect as a conveyance, although as to Miss Livingston, if she took it without notice of the deed to Alphonso, and as to Mrs. Norris, if either she or Miss Livingston took without such notice, it was valid and effectual. The only effect of this deed, judging from the contention of complainants' bill is, that it would constitute a relinquishment of the dower of Mrs. Haworth and that with it the con templated deed from Alphonso, conveying the legal title would, when made, vest a perfect title in Miss

Livingston discharged of the dower claim.   The record then showing no individual interest of the husband in the land, and he consequently being, in so far as the land is concerned, a party merely in right of his wife, any testimony his wife may have given is, as between him and her, to be regarded as concerning her own and not his interests.   As a witness as to her right to a surrender of the deed as fraudulently obtained and affecting her dower interest, Haworth was clearly incompetent, his exclusion as husband on the grounds of public policy, not having been removed by any legislation.   Regarding the bill, in so far as the husband is concerned, as one for the surrender of the deed as one fraudulently obtained, Mrs. Haworth was a competent witness in his behalf, and he in behalf of himself.   In so far as the ruling of the judge conflicts with these views it was erroneous.   To prove the case made by the bill in favor of the complainant, Alphonso, both Mr. and Mrs. Haworth were admissable as witnesses either in his behalf or against him.   Any disability as witnesses in Alphonso's behalf that might have resulted from their being parties, or from Mrs. Haworth's dower interest, was removed by the act of 1874, and there is none other attaching to either of them as witnesses as to Alphonso's case.

II.   We will now consider the case in so far as it may be regarded as affecting any rights of Mr. and Mrs. Haworth.

The deed of October 27th, 1877, from Eli Haworth and wife to Miss Livingston is one by the terms of

JUNE TERM, 1891. 781

Alphonso Haworth et al. v. Fannie M. Norris.—Opinion of Court.

which the former, "the parties of the first part," grant, bargain, sell, alien, remise, release, convey and confirm unto the party of the second part, Miss Livingston, her heirs and assigns forever, in consideration of fifty dollars, the receipt whereof is acknowledged, the described five acres of land, (a part of which description is that it is bounded "on the north and south by lands owned by the party of the first part,") and "the said party of the first part for their heirs, executors and administrators covenant that the said party of the first part was at the sealing and delivery of these presents lawfully seized in fee simple of a good absolute and indefeasible estate of inheritance" of and in the above bargained premises, "and have good right and lawful authority to grant, bargain, sell and convey the same, and that the party of the second part, her heirs and assigns shall and may at all times hereafter peaceably and quietly have, hold, use, occupy, possess and enjoy the above granted premises, and every part and parcel thereof, with the appurtenances, without any let, suit trouble, molestation, restriction or disturbance of the said party of the first part, their heirs or assigns, or of any other person or persons lawfully claiming or to claim the same, and that the same now are free, clear, discharged and unincumbered of and from all former and other grants, titles, charges, estates, judgments, taxes, assessments and encumbrances of what nature and kind soever." There is also a covenant of general warranty.

This deed is signed and sealed by Mr. and Mrs. Ha-

worth, and duly witnessed.    There is also a separate acknowledgment in due form made by Mrs. Haworth before a Justice of the Peace to the effect that she executed the deed for the purpose "of conveying all her right, title and interest in and to the land in said conveyance described and granted."

It may be remarked that the evidence does not establish the assertion of the bill that Miss Livingston was aware at the time she obtained the deed, or when she is alleged to have agreed to pay the five hundred dollars for the purposes.charged, that she could not get the money from her father.    The testimony falls short of proving that she made any fraudulent representations with a view to obtaining possession of the deed, or that the possession of it was obtained through fraud, accident or mistake, or contrary to the intention of the parties.    Towner vs. Lucas, 13 Grattan, 705.

It is sought to prove by parol evidence that Miss Livingston promised to return this deed if the funds were not procured by her from her father and paid to Mr. and Mrs. Haworth, and that such was the understanding and agreement under which the deed was delivered to and received by her, and also that the deed was not intended as an absolute conveyance of the property, but only given to her in order that she might show it to her father, and thereby induce him to let her have the money.    The introduction of parol evidence for such purpose was objected to.    Independent of any question of the competency of witnesses we are satisfied that parol testimony is inadmissible for the

purpose. Mr. Haworth cannot testify in his own be-
half, nor Mrs Hayworth in her behalf, nor any one in
behalf of either or both of them, to this end. We do
not deny that it may be shown in behalf of Alphonso
that Miss Livingston and Mrs. Norris bought with the
knowledge of his rights whatever they might have
been, nor do we mean to question or infrigne upon the
liberal rule as to proving a consideration not named in
a deed, but in our judgment parol testimony is not ad-
missible to show the alleged understanding or agree-
ment between Mr. and Mrs. Haworth and Miss Liv-
ingston as to returning this deed. This deed is a per-
fect instrument and the sole repository or evidence of
the language of the contract between these parties,
and their meaning is to be ascertained from its lan-
guage as applied to its subject matter. 1 Greenleaf
on Evidence, secs. 272 and 282. That the personal
covenants therein may not be binding on Mrs. Ha-
worth, and that in the absence of proof to the con-
trary the presumption is that her interest in the land
was no more than dower, still the contract is not a
conditional one even in so far as she is concerned, and
parol evidence is not admissible to show that it is such.
The effort here is not to show a delivery in escrow, for
delivery to a stranger is essential to an escrow; Wor-
rall vs. Munn, 5 N. Y. (1 Selden), 229; Devlin on
Deeds, secs. 314, *et seq.*; Southern Life & T. Co. v.
Cole, 4 Fla., 359; nor is it to prove that the deed was
never delivered, or that it came into her possession
without their knowledge or consent, or surreptitiously,

or illegally, which it seems can be proved by parol. Southern Life & T. Co. vs. Cole, 4 Fla., 359; Black vs. Lamb, 12 N. J., (Eq.), 108; Black vs. Shreve, 13 Ibid, 455; Roberts vs. Jackson, 1 Wendell, 478; Devlin on Deeds, sec. 295. While it can be thus shown that a deed was not to be delivered until a condition was performed, and that possession of it has been obtained improperly before the performance thereof, or by fraud, accident, or mistake, yet it cannot be shown by parol that an actual delivery was made under an agreement, that a condition should be performed, and the deed should not be operative unless it was performed. In the former case the purpose and effect of the evidence is to show that there was no legal delivery, but in the latter, the effect of the evidence offered is to contradict an instrument, absolute on its face, by showing, contrary to the terms of such instrument, that it was not absolute but conditional. Devlin, secs. 976, 314; Black vs. Lamb, *supra*; Black vs. Shreve; *supra*; Ward vs. Lewis, 4 Pick., 518; Marshall County High School Co. v. Iowa Evangelical Synod, 28 Iowa, 360; Galveston, &c., R. R. Co. vs. Pfeuffer, 56 Texas, 66; Lawton v. Sager, 11 Barb., 349; Williams vs. Higgins, 69 Ala., 517; McCann vs. Atherton, 106 Ill., 31; Arnold vs. Patrick, 6 Paige, 310; Madison & I. P. Co. v. Stevens, 10 Ind., 1; Miller vs. Fletcher, 27 Grattan, 403; Duncan vs. Pope, 47 Ga., 445; Simonton's Estate, 4 Watts, 180; Turner vs. Lucas' Executor, 13 Grattan, 705; Watson vs. Hurt, 6 Grattan, 633.

It is not pretended, nor is the case upon the theory, that anything has been incorporated into the instrument or omitted from it contrary to the purpose and understanding of the parties, nor that the grantee's possession of it was not given voluntarily by the grantors therein, nor, saving the unsupported allegation that Miss Livingston knew that she could not get the money from her father, is it claimed that any element of fraud entered into her getting possession of it, nor that she acquired possession through accident or mistake, or before it was intended that she should have it. It is the case where a deed as absolute in its terms as language can make it, has been voluntarily delivered, and it is now sought to incorporate in or annex to it, by parol evidence, an agreement which will render the operation of its terms conditional and contradict them. In Ward vs. Lewis it is said : It could not have been delivered as an escrow because it was delivered to the parties, an escrow can be delivered only to a third person ; it could not have been delivered to the parties conditionally to take effect upon the happening of any future contingency because this would be inconsistent with the terms of the instrument itself. * * * To permit parties to a deed purporting to be absolute to show by parol evidence that it was conditional, and to avoid for a non-performance of the condition, would be not only a violation of the fundamental rules of evidence, but productive of great injustice and mischief. In Marshall County High School Co. vs. Iowa Evangelical Synod the opinion.

delivered by Dillon, C. J., observes in effect : The deed contains no words making the raising of a $25,-000 endowment a condition of the grant, and there was no mistake in the deed, nor was it intended by either party at the time of the execution of the deed that it should contain any such condition, and the case was not one of a bill to correct the deed ; and that it was therefore plain that it was incompetent to ingraft such a condition upon the conveyance by parol evidence. In Galveston, &c., R. R. Co. vs. Pfueffer it was held that parol evidence is not admissible to defeat a right to land conveyed by deed, when its object is to establish a condition subsequent ; and also that the absolute grant by deed of right of way is not defeated by the failure of the grantee to comply with the conditions upon which the grant was obtained, there being no charge of fraud. In Lawton vs. Sager the referee admitted parol testimony to show that at the time of the delivery of a deed of assignment for the benefit of creditors, it was agreed between Sager, the grantor therein, and the grantee or assignee that the latter should procure certain creditors who had commenced proceedings against Sager as an absconding debter, to discontinue those proceedings and come in with other creditors under the assignment, and that upon his failure to effect this arrangement he was to return the assignment to Sager. It was held that the admission of this testimony was erroneous, and that if it be intended that a deed shall not take effect until some subsequent condition shall be performed, or event happen, such

## JUNE TERM, 1891.  787

Alphonso Haworth et al. v. Fannie M. Norris.—Opinion of Court.

condition must be inserted in the deed itself, or else it must not be delivered to the grantee. That parol evidence was admissible as to whether a deed had been delivered or not, but not to prove whether a deed when delivered shall take effect absolutely or only upon the performance of some condition not expressed therein. "To allow a deed absolute upon its face to be avoided by such evidence would be a dangerous violation of a cardinal rule of evidence. This deed being absolute upon its face, and having been delivered to the grantee himself, took effect at once. It could not have been delivered to take effect upon the happening of a future contingency, for this would be inconsistent with the terms of the instrument itself. Without regard therefore to any understanding which may have existed between the parties at the time the deed was delivered it must be held to be an absolute conveyance operative from that time." The doctrine of Williams vs. Higgins, and that of McCann vs. Atherton is of practically the same effect ; and the decision in Arnold vs. Patrick was that where a person who had contracted for the purchase of land, obtained a deed of the same from the vendor under an agreement that it should not be used until the balance of the purchase money then due was paid, the delivery of the deed was valid to pass the legal title to the land to the vendee, subject to the vendor's lien for the purchase money. In this case the vendee represented to the grantor that the money would be obtained upon showing the deed to certain men then waiting at his store who would let

him have the money as soon they could see that he was to have a deed of the premises, and that the deed should not be used or put in force until the money was paid to the grantor, and the grantor signed and delivered the deed, stating it was not to be recorded or acknowledged until the purchase money was paid, and calling on a party to take notice it was only delivered conditionally. In Turner vs. Lucas' Executor, 13 Grattan, 705, it is held that parol evidence will not be received to engraft upon a valid written contract an incident occurring cotemporaneously therewith and inconsistent with its terms; that the fraud which will let in such evidence must be fraud in the procurement of the instrument and going to its validity, or some breach of confidence in using a paper delivered for one purpose and fraudulently perverted it to another; and that parol evidence was not admissible to prove in behalf of one of the sureties in a bond that he was induced to sign the bond upon the express promise of the obligee that he should not be required to pay any part of it, and that the obligee would give the surety a written indemnity to save him harmless.

Parol evidence not being admissible to show that the delivery of the deed to Miss Livingston was conditional, Mr. and Mrs. Haworth are for this reason, and that indicated in the third paragraph of this subdivision of the opinion, not entitled to any relief on this record.

III. In view of the character of the case sought to

JUNE TERM, 1891.      789

Alphonso Haworth et al. v. Fannie M. Norris.—Opinion of Court.

be made in behalf of Alphonso Haworth, it being re-
ally one to remove cloud upon title, the question of
the possession of the land at the commencement of the
suit becomes material to the equitable jurisdiction
invoked.

The bill alleges that none of the defendants have
ever had possession or control of the land, but that
Alphonso was in possession of it at the time the deed
was made to Miss Livingston, and has ever since been
and is now in possession of it; that defendants, Norris
and wife, are going upon and trespassing on the land
and cutting the wood and timber from the same, and
attempting to carry therefrom such wood and timber;
and still continues to do so, though warned not to.
The answer of Mrs. Reed and her husband is, upon
this point, that they supposed they were in possession
of the land, the said Emma down to the time of her
marriage, May 4th, 1880, and they to the date of their
deed to Mrs. Norris.   Norris and wife deny each and
every allegation of the bill as to the possession of the
land by Alphonso since the execution of the deed to
Miss Livingston, and aver that at the time of the ex-
ecution of the deed to Mrs. Norris, which was April
11th, 1885, Mr. and Mrs. Reed were in possession of
the land, and that thereupon Mrs. Norris and her hus-
band in her right took possession of it and had it sur-
veyed, and that one of the stakes of the survey is
still standing, and that on or about the first day of
September, 1885, they had an employee to go on the
land for the purpose of clearing the same for cultiva-

tion of fruit trees, and this employee under their direction went upon the land and continued to clear the same from that day up to the time they received notice of the injunction issued in this cause, and that complainants knew of the actual, notorious and continued adverse possession taken by these respondents, and not until October 13th, 1885—two days before the filing of the bill—did complainants or either of them let respondents know that they had any objection to such acts of possession, but on the day named Eli threatened that he would bring this suit if respondents continued in possession.

The testimony as to possession was taken between July 12th, and August 15th, 1886, and is as follows : Eli Haworth, who lived about three miles from the land, on the San Pablo plantation, says that his son, and himself for him, were at the time of the execution of the deed to Miss Livingston, and have always up to the time of testifying, been, and were then in possession, paying taxes upon it and exercising all rights of possession. That Miss Livingston never took possession in any way. That nothing has ever been done on the land except what "we" have done; that his son was working on the land and has been ever since occasionally. Edward Roundtree, a witness for complainants, who lives about seven miles south of Mayport (the land being about one mile north or northeast of Mayport) says that he knew Eli Haworth was in possession of the land; that Norris had a man on it clearing it up about October, 1885, and wanted wit-

ness to clear up an acre; would not "say for certain, it was about then though; that Miss Livingston never had any one on it clearing it up; that this was the first time he saw Norris or any one for him working on the land; that he passed it every week, and Norris did not have any one there before. Alphonso, who lived with his father, except for the last year previous to testifying, says Miss Livingston never had posses-' sion. To the question: Who has been in possession of the land since Miss Livingston's deed was made, and what acts of ownership and possession have been exercised over the land, he replies: "I have myself. I have planted some orange trees on the land, started to clear a piece some two or three years ago for the purpose of building. That is all I have done to it." He also testifies that he has never seen Miss Livingston or any one on this land; that he passes it two or three times a week except the last year when he has been working at Pablo Beach. Mrs. Haworth says Miss Livingston never was in possession of it; that Alphonso has had possession since the deed to Miss Livingston, but has done nothing with it.

The answer of Norris and wife is responsive to the bill upon the point in question, and its statements are controlling evidence as to their possession, in the absence of sufficient testimony to overcome them. These statements show that they were in physical possession when the bill was filed; giving the acts constituting such possession, and not a mere general averment of possession. Roundtree's testimony tends to confirm

them. Alphonso, according to his own statement, had been absent for a year before the time of testifying, and this year covered the period for which Norris and wife claim to have been in possession. He does not show that the orange trees were planted, or any other act of possession exercised during this year or the period of the Norris' possession. No fact or act evidencing possession, and inconsistent with those stated as to the Norris' possession is shown; and neither Eli Haworth, nor Mrs. Haworth, nor Alphonso, testify that Norris and wife did not take possession in the manner averred by their answer; nor is it shown that these witnesses were in a position to know that it was not done. Admitting or assuming statements of the answer as coming from Norris are not evidence, they are yet so as coming from Mrs. Norris. They are made on her own knowledge as well as his, and his possession was hers in law, the legal title being in her, if not in Alphonso Haworth.

The material allegations of the bill as to possession are not sustained by the record.

In view of the above conclusion as to possession, it follows, since the claim or title of Alphonso to the land is legal in its character, that he has a sufficient remedy at law in an action of ejectment, and cannot successfully invoke the equitable jurisdiction for re·moval of cloud from title to land. Sloan vs. Sloan, 25 Fla., 53; Byrne vs. Hinds, 16 Minn., 521. If Alphonso is entitled to an injunction against trespass, pending an action at law, he can apply for it. Erhardt

vs. Boaro, 113 U. S., 537. If Mrs. Norris' title was acquired for a valuable consideration and without notice of Alphonso's, it is against him and his father a valid legal title, and she being in possession at the time this bill was filed, a court of law is the forum in which to try the question of title between them.

The decree dismissing the bill is affirmed.