Governor, for use of, v. Ext'rs of Hooker—Argument of Counsel.

property by the cutting and carrying away of their trees and timber, no other injury or damages being claimed by the declaration or attempted to be proved. The damages found by the jury are excessive and not warranted by the law of the case.

The judgment is reversed and a new trial awarded.

WM. D. BLOXHAM, GOVERNOR, FOR THE USE OF CUTHBERT BLOUNT ET AL., APPELLANTS, VS. H. L. CRANE AND JAMES N. HOOKER, EXECUTORS OF W. B. HOOKER, APPELLEES.

1. An executor in taking the office accepts not only all the trusts imposed by the will under which he acts, but also all the trusts in respect to the assets with which his immediate testator was charged. And an executor of a guardian is liable to a ward to account and pay over to him money due to the ward on arriving at majority which was in the hands of the guardian.

2. Such money due to the ward is not general assets of the deceased guardian for the payment of debts and for distribution.

3. An executor of a guardian in possession of the estate is, like the guardian, a trustee of funds of the ward which was in the custody of the guardian at the time of his death, and in a suit in behalf of the ward against the executor to recover the funds so held in trust, neither the statute of limitations nor the statute of non-claim can be pleaded in bar.

4. A demurrer by a defendant to a bad replication to his plea does not entitle the defendant to judgment if the plea is bad.

Appeal from the Circuit Court for Hillsborough county. This is an action of debt on a guardian's bond. The facts are stated in the opinion.

*S. M. Ellis* and *James T. Magbee* for Appellants.

To the declaration of the plaintiffs the defendants filed nine pleas; the plaintiffs demurred to the first six pleas and

the additional plea of the defendants, joined issue on the 7th and 8th pleas, and also replied to the 1st, 2d, 3d, 4th and additional pleas of the defendants ; to this replication defendants demurred.

The Circuit Court sustained the plaintiffs' demurrers to the 1st, 2d, 5th and 6th pleas, and also sustained the defendants' demurrers to the plaintiffs' replication. The court having overruled plaintiffs' demurrers to the 3d, 4th and additional · pleas the plaintiffs excepted, and having failed to join issue or further reply to said pleas final judgment of dismissal was rendered by the court, and from that judgment plaintiffs take this appeal.

Plaintiffs contend that the court erred in overruling plaintiffs' demurrers to the 3d, 4th and additional pleas of defendants.

2d. That the court erred in sustaining defendants' demurrers to the plaintiffs' replication to 3d, 4th and additional pleas of defendants.

The third plea of the defendants alleges that " this action was not begun within one year from the issuing of letters testamentary to these defendants." This plea is founded on Sec. 15, Chap. 1869, Laws of Florida, 1872. As before stated the court overruled plaintiffs' demurrer to this plea and struck out plaintiffs' replication to same, the replication alleging the infancy of Cuthbert Parker for more than one year after issuing letters testamentary, the honorable Circuit Judge thereby adopting the view of the defendants' counsel that infancy was no bar to the running of the statute. As counsel for plaintiffs below (appellants here), we contend that the statute of 1872 does not apply to this case ; and,

2d, If said statute of 1872 (Sec. 15, Chap. 1869,) does apply to this case the plea of infancy of the *cestui que trust* is sufficient to prevent the statute from interposing a bar

JUNE TERM, 1882.    165

Governor, for use of, v. Ext'rs of Hooker—Argument of Counsel.

to the plaintiffs' recovery in this cause. The defendants' testator, Wm. B. Hooker, died in the early part of the year 1871, his will was offered for and admitted to probate in July, 1871, the statute of limitations of 1872 was not enacted for nearly one year after, being signed by the Governor February 27th, 1872. The counsel for defendants (appellees) contends that this law relates back, in fact, becomes an *ex-post facto* law, and that the plaintiff must be barred of justice and the right to recover her patrimony by this statute, which, by their own admission, did not become a law for almost one year after her cause of action accrued, and the Circuit Court adopted this view in over-ruling plaintiffs' demurrer to this plea. With all due deference to the honorable Circuit Judge, this view seems to counsel for appellants most astonishing and without any law or authority to warrant it, either in the statute itself or the decision of this court.

In the case of Sanderson vs. Sanderson, 17 Fla., p. 820, this court held that such a claim as this was not covered by the 19th section of said act of February 27th, 1872; but taking the appellees' view of this cause to be correct, viz: that this cause of action accrued on the death of Wm. B. Hooker or on the appointment of his executors, then the statute of limitations in force at that time would be the rule of law to govern the case; but the counsel for appellees contend that there was no statute of limitations in force in this State from 1861 till the passage of the law of 1872, and that therefore the law of 1872 must govern.

We think this view of the law incorrect, because there is no principle in the decisions of this court, no rule more firmly ingrafted into the jurisprudence of this State than the rule that the common law governs in the absence of a statute. This being the rule, should not the common law period of limitation and the common law exceptions on

account of disabilities of infancy and coverture govern? Angel on Limitations, 6 Ed., §16.

That the statute does not relate back we refer the court to the case of Sanderson vs. Sanderson above cited and to Angel on Limitation, p. 14, Sec. 22.

At what time does the right, in her own name, of a ward to sue her guardian for failure to perform his duties and fulfill his trust accrue?

If Wm. B. Hooker had lived until Cuthbert Parker, now Cuthbert Blount, had attained to the full and legal of 21 years, then she could have called him to account in a court of law, and not till then. Did his death before that time change the law in regard to her disability? The answer must be certainly not. The trust of this guardianship devolved upon the executors of Wm. B. Hooker the moment they accepted that trust. They stood in precisely the same place Hooker did before his death in regard to this *cestui que trust.* She was an infant at that time, and in her own name could no more sue these executors than she could have sued her original guardian prior to attaining her majority.

These very defendants were the persons whose duty it was to guard and protect her rights and interests; they were occupying a double capacity. They, as the executors of Wm. B. Hooker, were indebted to themselves as guardians of this *cestui que trust* in the sum of $1,471. Was the duty they owed the estate of Wm. B. Hooker superior to the duty and obligations they were under as guardians of Cuthbert Parker? If they so regarded it, and the interests of the two trusts were in conflict, could they act for both and then years after plead their own wrong and neglect to avoid the recovery of their ward of her just rights? Would not justice, humanity and the dictates of common honesty have caused them, when they found the two trusts in con-

flict, to have resigned one or the other and caused some worthy and competent person to be appointed guardian of this orphan child, to whom they were under legal obligations as well as the obligations arising from consanguinity, as they are her uncles; or, on the other hand, to have acted in good faith as her sworn representatives and have guarded her interests with the care and fidelity she had a right to expect from them, and have resigned this trust as executors of the will of Wm. B. Hooker, and caused that trust to devolve on some other person?

Appellants contend that the possession of the trustee is the possession of the *cestui que trust*, and that the statute does not run against the *cestui que trust* in favor of the trustee. See 26 Texas, p. 537; Johnson vs. Smith, 27 Missouri, 591; Taylor vs. Blair, 14 Missouri, 437.

Appellants also contend that the statute has no application to express trusts like this when there is no disclaimer of the trust, and that appellees, to avail themselves of the statute, should first have disavowed the existence of the trust. (Seymore vs. Frier, 9 America Law Register, p. 199.) The 4th and additional pleas of the defendants are the same in effect, and we propose to refer to the point raised in them briefly.

Defendants allege that this claim was not presented to them as executors within two years from the date of the issuing of letters testamentary. The statute says all claims must be presented within two years from the date of the issuing of letters testamentary. The statute says all claims must be presented within two years after issuing letters testamentary, but the statute is silent as to how or by whom such claim shall be presented, and the legal presumption is that the party to whom the claim is due or in case of her disability from any cause, then it should be presented by the legal representative of the party. The question then

168      SUPREME COURT.

Governor, for use of, v. Ext'rs of Hooker—Argument of Counsel.

arises who was the legal representative of Cuthbert Parker at and for two years after the appointment of these appellees as executors of Wm. B. Hooker? Most unquestionably the appellees were her legal representatives at that time, as the trust of her guardianship devolved upon them. Then these appellees, being the legal representatives of Hooker's estate and the legal representatives of Cuthbert Blount, possessing undoubted knowledge of this appellant's claim against the estate of Wm. B. Hooker, in possession of all the documents pertaining to it, with evidence indisputably sufficient to establish this claim against the estate of their testator beyond question, can they now be permitted to allege that this claim was not presented to them within the statutory period?

We do not regard it necessary to present any authorities to the court in support of so self-evident a proposition as this. Confiding in the justice and equity of her cause, believing that this court will grant her the justice denied by the honorable Circuit Court, the appellants submit this cause.

*J. B. Wall, S. M. & G. B. Sparkman* for Appellees.

Counsel for appellees claim—first, that since the plea is sufficient in law, and it sustainable by proof, is a complete bar to the action. Hence the court properly overruled appellants' demurrer to that plea. When the statute has not run in the life-time of the deceased, and the cause of action survives, then, after his death, it ceases to run until letters of administration or testamentary are issued. Then in actions of this kind suit must be brought within one year after the issuing of letters testamentary or of administration are issued. Sanderson's Administrators vs. Sanderson, 17 Fla., 850 ; McClellan's Digest, 734, Sec. 15.

This claim is neither a legacy nor a distributive share of an estate, consequently is reached by the statute of limitation. Amos vs. Campbell, 9 Fla., 187.

Statutes of limitation apply to all cases except trusts. And to exempt a trust from a bar of the statute it must be —first, a direct trust; second, it must be a trust as belongs exclusively to a court of chancery, and third, it must arise between a trustee and the *cestui que trust.* (Angell on Limitations, 161.) Appellants' claim is not a direct trust; it does not arise between the trustee and a *cestui que trust.* And it is not a claim that belongs exclusively to a jurisdiction of a court of chancery. Appellants themselves recognize that fact, for this suit is brought on the common law side of the court.

Second. Defendants' fourth and additional pleas are sufficient in law. Appellants should have presented said claims to appellees within two years from a publication of a notice to debtors and creditors. Filyaw & Wife vs. Laverty, 3 Fla., 72; McClellan's Digest, 84, Sec. 30.

If appellants have any claim at all against appellees this claim is that of a creditor, and not of a legatee or distributee. Hence it is at once affected by the statute of nonclaim. Amos vs. Campbell, 9 Fla., 187.

Third. The court very properly sustained defendants' demurrer to plaintiffs' replication to said pleas. Neither coverture nor infancy are any defence to pleas in a case like this, setting up the statute of limitation and of nonclaim. Neither of said statutes make any proviso or reservation in favor of infants or married women in such cases.

Lastly. It follows from what has been stated above that the court below very properly overruled appellants' motion for a new trial, and that the action thereon was not erroneous.

THE CHIEF-JUSTICE delivered the opinion of the court.,

This was a suit on a guardian's bond executed on the 24th day of April, 1858, by Wm. B. Hooker, now deceased, brought against the appellees, executors of the will of Wm. B. Hooker. The bond was given to the then Governor and his successors in office, and is conditioned that "Wm. B. Hooker will well and truly and faithfully discharge the duties and perform the trusts committed to him as guardian of the person and estate of Cuthbert Parker, infant daughter of William Parker, late of said county, deceased, during the minority of the said Cuthbert Parker, and render to this court a just and true account of his guardianship when he shall be thereunto required."

The declaration alleges that Cuthbert Parker has attained lawful age and is now the wife of James N. Blount. Wm. B. Hooker died in 1871, and defendants are the executors of his will. The said Hooker as such guardian had in his possession a large sum of money belonging to his ward, and the sum of fourteen hundred and seventy-one dollars remained in his hands at a settlement of the estate made by the said guardian with the Probate Court, which settlement was duly approved by the court in 1867, and Hooker in his lifetime, and his executors since his death, have refused to pay over the money to Mrs. Blount or to her husband. Plaintiff demands judgment for the $1,471, and interest from 1867.

Defendants filed several pleas, upon some of which issue was joined, and to others, or to the replications thereto, demurrers were interposed. The attention of the court is directed only to questions arising upon the demurrers.

The third plea is that the suit was not commenced within one year after the issuing of the letters testamentary.

The fourth and an additional plea set up that defendants

as executors, &c., in 1872, and after February 27th, 1872, they caused due notice to be published to all persons having claims or demands against the estate of decedent to present the same duly authenticated to them as executors within two years from the date of such notice in default whereof said notice would be pleaded in bar of their recovery, and that the plaintiffs alleged demands was not presented within the two years.

Plaintiff demurred to these pleas that they did not constitute a defence, and the court overruled the demurrers.

Plaintiff, with the demurrers, filed replications to each plea, alleging that at the time of the issuing of the letters testamentary, and at the time of the publication of the alleged notice, the ward was a minor. Defendants demurred to these several replications and the court sustained the demurrers.

The plaintiff declined to plead further, and on motion of defendants the court dismissed the suit and plaintiff appealed. The errors assigned are the overruling of plaintiffs' demurrers, and the sustaining of defendants' demurrers and pleas, and in giving judgment for defendants dismissing the suit.

The questions thus presented are—1, whether the suit can be maintained under the statute of limitations, sec. 15, act of February 27, 1872, not having been brought against the defendants as executors within one year after letters testamentary issued ; and 2, whether the claim of plaintiff was barred by the statute of non-claim, the same not having been presented to the executors within two years after notice by them requiring claims to be presented against the estate of Wm. B. Hooker.

The first question arises upon the application of the second clause of Section 15 of Chapter 1869, Acts of 1872, (McClellan's Digest, p. 734,) which reads as follows : " If

a person against whom an action may be brought die before the expiration of the time limited for the commencement thereof, and the cause of action survives, an action may be commenced against his executors or administrators after the expiration of that time and within one year after the issuing of letters testamentary or of administration."

The first section of the act provides that civil actions can only be commenced within the periods prescribed in the act.

The same statute provides that " this act shall not apply to any action by this State, * * * or with respect to any moneys or property held or collected by any officer or trustee, or his sureties." Sec. 20.

A guardian holds the money of his ward as a trustee for the use of the ward. This guardian was, therefore, a trustee of " money or property held or collected " for the use of the ward within the meaning of the act. It is a *direct* trust.

The result is that the provision of the act requiring suit to be commenced against executors or administrators within one year after the issuing of letters to them cannot apply, where the suit is brought by or in behalf of a *cestui que trust* to recover money held or collected by a guardian which belongs to his ward. This was always the rule in equity, and it is saved as to actions at law by the exception of cases against trustees by this statute. Angell on Limitations, §§166, 468, and citations.

The possession of the trustee of an express trust is in law the possession of the *cestui que trust*, and there can be no adverse claim or possession during the continuance of the relation. 2 Perry on Trusts, §863, and notes.

An executor of a trustee or guardian by entering upon the administration takes the property and estate charged with all the trusts attached to them. "An executor, in

proving the will and in accepting the office from his immediate testator, accepts not only all the trusts imposed by the immediate will under which he acts, but also all the trusts in respect to the assets which come to his hands with which his immediate testator was charged; and he must execute those trusts until he is relieved by a new appointment in the Probate Court and a settlement and payment over of the assets. He will not be allowed to accept the trusts created by his immediate testator and to repudiate those with which his testator was himself charged. 2 Perry on Trusts, §264; Mitchell et al., Ex'rs., vs. Adams, 1 Iredell, L., 298; Schenck vs. Schenck, 1 C. E. Green, N. J., Ch. 174; Worth vs. McAden, 1 Dev. & Bat. Eq., 199, 209.

The trust fund coming to the hands of the executors is held by them, not as guardians but as the legal representative of the guardian, for the purposes of the trust, and not otherwise, and they are in no better or other position in respect to the statute of limitations than would be the guardian himself if he were living. The suit is not brought to recover an ordinary debt due from the testator, but to recover money in his possession and in the possession of his representatives as custodians, belonging to the ward.

Neither is the statute of non-claim pleadable by these executors as such trustees for the same reason. The claim here made is not strictly that of a past due indebtedness of the testator to the plaintiff, for in his lifetime he owed no debt to the ward who was an infant, and no cause of action had accrued because until her majority he rightfully held her money for her use. No right of action accrued until she became of lawful age, and then it accrued against the executors because they had become the trustees holding the trust money. An executor is liable upon an obligation or note which becomes payable subsequent to the death of the

testator. (3 Williams on Ex'rs., 6 Am. Ed., 1826.) Neither did a right of action arise in this case solely because the guardian had given a bond binding himself to account to and pay over the money to her, but it accrued by reason that he had her money in his hands; and the exectors, as we have seen, stand in his place in respect to it. They stand in the double relation of executors representing the estate of the testator, and trustees holding the funds of the ward by virtue of being executors and legal representatives of the estate. As such trustees they represented the ward, and it was their duty to withhold her money from liability to pay the general debts and from distribution. They are bound by the trust resting upon the guardian. The money does not belong to the general assets of the estate.

In Sanderson's Adm'rs vs. Sanderson, 18 Fla., 820, 846, a claim against the estate of the intestate due to an administrator was objected to because it had not been "presented" under the statute of non-claim; and it was held upon principle and authority that being himself the creditor it was not necessary to enact the absurd performance of presenting his own claim to himself in his capacity of administrator, but if his demand was legitimate he could retain it out of the assets, the estate being solvent. Here also it seems that these executors holding this fund in trust and as trustees representing the ward, it was unnecessary that they should "present" this claim to themselves as executors. The amount due to the ward was known by the accounting had with the Probate Court in 1867 by the guardian as shown by the records of the same court from which the letters testamentary were issued to these defendants.

No further accounting by the guardian can now be had because he is not in existence.

Where a complaint alleged that certain funds were held

by A. at the time of his death in trust for the plaintiff, and that the defendants, the executors of A., had refused to account to the plaintiff for such funds, it was held that a good cause of action was stated. King vs. Lawrence, 14 Wis., 238.

The court erred, therefore, in overruling the demurrer of the plaintiff to the third, fourth and additional pleas of limitation and non-claim.

The plaintiffs' replication to these pleas setting up infancy, coverture, &c., in avoidance of the statute of limitation, tendered an immaterial issue, and was therefore demurrable, but as the demurrer of the defendants thereto reached all defects in the pleas replied to, the defendants were not entitled to judgment upon such demurrer.

The judgment dismissing the suit for the causes stated is reversed and the cause remanded, with directions to enter judgment for plaintiff upon the demurrer to the third, fourth and additional pleas, and for such further proceedings as may be had consistent with the practice of the court.