JAMES N. WINN ET AL., APPELLANTS, VS. GILLUM B. STRICKLAND, APPELLEE.

1. It is essential that a complainant should be in possession in order to maintain a bill to remove a cloud upon the title to real estate when not wild or uncultivated.

2. When a court of chancery has acquired jurisdiction over the person of a party in a proper case, it may, by virtue of its power to coerce obedience to its decrees, enforce the performance of contracts relating to l and situated in another State. Such court, however, has no power to divest title to real estate situated in another State. In such cases the court acts upon the person of. the holder of the legal title subject to its jurisdiction, and if such holder fail to convey by proper deed the legal title, in obedience to a decree commanding it to be done, no effect can be given in the foreign jurisdiction to the decree, so far as a conveyance of the legal title is concerned.

JUNE TERM, 1894. 611

James N. Winn et al. v. Gillum B. Strickland.—Statement of Case.

3. It is essential that the court should acquire jurisdiction of the persons of the parties, and if it proceed without such jurisdiction, either by the service of proper process, or personal appearance, its judgments or decrees can have no binding effect.

4. A party to a suit over whom the court has acquired jurisdiction may be estopped by averments in pleadings filed by him.

5. A trustee in whom is vested the legal title, and who is chargeable with the proper care and preservation of the property, is a necessary party in all proceedings affecting the estate, where there is a remainderman.

6. The possession of one *cestui que trust* will be regarded in law as the possession of a co-*cestui que trust*, as well as that of the trustee, in the absence of any clear and manifest hostility on the part of the occupying *cestui que trust* brought to the knowledge of the trustee and co-*cestui que trust*.

7. A tenant can not dispute or gainsay the title of his landlord so long as it remains as it was at the time the tenancy commenced, and no fraud has been practiced in securing it; yet it may be shown that the title under which the tenant has entered has expired, or has been extinguished by operation of law.

8. While the attornment of a tenant to a stranger may not alone operate as a disseizin of a landlord, yet if possession be assumed by other acts besides the attornment, and the landlord has full knowledge of such change in the tenancy and of the possession in connection therewith, the latter may become adverse as to him.

Appeal from the Circuit Court for Leon county.

STATEMENT.

Appellants filed a bill in the Leon Circuit Court, and alleged in substance that on the 10th day of May, 1859, Thomas B. Winn made and published his last will and testament in due form of law in Thomas county, Georgia, and therein bequeathed to his wife Elizabeth, for and during her natural life, a plantation situated in said county, known as the "home place," and the residue of his real estate the testator bequeathed to

612 . SUPREME COURT.

James N. Winn et al. v. Gillum B. Strickland.—Statement of Case.

his children or their legal representatives, to be equally divided amongst them under the limitations as follows, to-wit: that Joseph S. Neely and James N. Winn were ordained trustees under the will for the daughters, to receive and control their distributive shares free from the control of their husbands, should the daughters marry, and should they die with children, then the trust property to vest absolutely in said children; but if they should die childless, the trust property to revert to the testator's heirs at law. Further, the testator directed in his will that if the said real estate should be sold for the purpose of division, then the proceeds should be equally divided amongst his children, and the trustees named should receive the distributive shares of the daughters realized from said sale and invest the same for them in property to be held subject to the same trusts and free from any marital right that might accrue. That the testator died on the 18th day of December, 1859, without altering or revoking said will, seized and possessed of real estate situated in Thomas county, Georgia, and certain described real estate situated in the county of Leon in this State, and also left surviving him his wife Elizabeth, and Harriet E. Winn, Mary C. Winn, daughters, and James N. Winn and Franklin J. Winn, sons, his only children.

The will is alleged to have been probated in due form of law in Thomas county, Georgia, and letters testamentary issued to the said Joseph S. Neeley and James N. Winn; a copy of the will and the probate thereof under the certificate of the Clerk of the Court of Ordinary for the said county of Thomas being filed as an exhibit and part of the bill. That under and by virtue of the terms and limitations of said will an undivided one-fourth interest in said real estate was.

JUNE TERM, 1894. 613

James N. Winn et al. v. Gillum B. Strickland.—Statement of Case.

vested in each of the said James N. and Franklin J. Winn, and an undivided one-half interest vested in the said Joseph S. Neely and James N. Winn, as trustees for the said daughters, Harriet E. and Mary C. Winn, and that the said trustees accepted the trust imposed upon them by said will and took possession and control of the estate of said daughters upon the death of the testator, and retained the same jointy until the death of Joseph S. Neeley, which was during the year 1863, and the said James N. Winn, as surviving trustee, has retained the possession and control thereof.

It is alleged that Harriet E. Winn afterwards married James J. Blackshear, who afterwards died intestate, leaving his said wife and the following children, to-wit: Emily E. Blackshear, James J. Blackshear and Mary C. Blackshear; that the said Harriet E. Blackshear died after the death of her husband, leaving the said children who thereupon, under the provisions of said will, became the owners in fee of an undivided one-fourth interest in and to the said lands situated in Leon county, Florida, and who still own the same. That the said Mary C. Winn during the year 1867 married John H. Sloan, who afterwards died intestate, leaving his said wife and an infant daughter, I. H. Sloan.

It is also alleged that James N. Winn, on the 6th of February, 1863, conveyed his undivided one-fourth interest in said land in Leon county to himself as guardian of Franklin J. Winn, and as trustee aforesaid, under the limitations of said will and retained possession of the same in accordance with the terms of said trust, the consideration for said conveyance being trust property bequeathed under said will to the said daughters; that by virtue of said conveyance

Franklin J. Winn now owns in fee simple and is in possession and control of an undivided one-third interest in the said real estate; the said Emily E., James J. and Mary C. Blackshear now own in fee simple and are in the control and possession of an undivided one-third interest thereof; and James N. Winn, as trustee aforesaid, owns the legal estate and is in the possession and control of the remaining undivided interest in said property; but the said Mary C. Sloan, during her natural life, is entitled to the rents and profits arising from the interest possessed and controlled by the said James N. Winn, trustee.

It is further alleged that Mary C. Sloan, in the year 1885, without the consent or knowledge of complainants, mortgaged the said real estate, first to William M. Hammond, to secure $1,206.45, and afterwards to defendant Gillum B. Strickland, to secure the sum of $2,000, and that the said Mary C. had no title to said lands and no authority to execute said mortgages, and the said Hammond and Strickland at the time of the execution of the same had either actual or constructive notice thereof. That said Strickland, in April, 1887, filed a bill in chancery in the Circuit Court for Leon county against Mary C. Sloan, without making complainants parties, for the purpose of foreclosing his said mortgage, and that on the 18th day of June, 1889, a decree of foreclosure was granted, and on the 5th day of August following the said lands were sold under said decree and Strickland became the purchaser thereof for the sum of $1,651.62, and received a deed of conveyance from a master, a copy of which is attached to the bill. The price paid for the lands at the master's sale, it is alleged, was inadequate, and that they were reasonably worth five dollars per acre; also that complainants, when said lands were

offered for sale under said decree, gave public notice of their right and title to and possession of said lands.

It is also further alleged that while the said deed to Strickland is regular in form, it is void in fact, and that he acquired no title whatever in and to the said lands by virtue of said foreclosure sale and deed made thereunder; but that he insists that said deed is good and conveys the title of the lands to him; however he purposely refrains from bringing suit against complainants to test their title, and thereby clouds their title to said land. That Strickland on divers occasions since the sale of said lands has threatened to expel complainants' tenants from the lands unless they would attorn to him, and, failing to influence them by such threats, has offered to lease said lands to said tenants for at least half the rental value thereof, thereby attempting covertly and fraudulently to possess himself without bringing an action to test the validity of his said deed and right of possession of said lands. The specific relief prayed for is that the said deed of conveyance to the defendant be declared irregular, null and void as to complainants, and that the cloud created thereby may be removed and defendant enjoined from claiming title to said lands, and from leasing or attempting to lease the same, or of interfering with the possession of complainants or their tenants on said lands.

The answer of the defendant admits as true the allegations of the bill as to the publication and probate of the will of Thomas B. Winn, and that the testator bequeathed to his wife certain property in Thomas county, Georgia, and the residue of his property to his four children, and appointed Joseph S. Neely and James N. Winn executors of his will, and

trustees for his daughters, Mary C. Winn, who subsequently married John H. Sloan, who afterwards died, leaving his wife and one child surviving, and Harriet E. Winn, who married James J. Blackshear, both of whom have died leaving three children surviving as stated in the bill.

Defendant answers that he is informed and believes that Thomas B. Winn after making his will departed this life in December, 1859, seized and possessed of a large estate consisting of lands, slaves and other property, partly in Georgia and partly in Florida, all of which went into the possession of said executors.

It is alleged that Joseph S. Neely died in 1862 or 1863 possessed of a large estate in land and other property which was inherited by the descendants of Thomas B. Winn, deceased, and which was administered by James N. Winn. That defendant was not advised as to what distribution was made of the two estates of Thomas B. Winn, deceased, and Joseph S. Neely, deceased, further than as shown by the record of a cause brought on the chancery side of the Superior Court of the Southern Circuit of the State of Georgia, in Thomas county, in which cause F. J. Winn, one of the complainants in the present bill, was complainant, and the other heirs and legatees of the estate of Thomas B. Winn, deceased, were defendants. That complainant F. J. Winn is estopped from setting up any claim to the Leon county lands by the statement and facts contained in his said bill against the heirs of Thomas B. Winn, deceased, filed in said Superior Court in 1876, and which, after describing all the lands in Leon county, Florida, belonging to Thomas B. Winn in his lifetime, proceeds to state that he, F. J. Winn, had sold his interest therein to Mary

C. Sloan, and that J. J. Blackshear and Harriet E. Blackshear likewise had sold their interest in said lands to said Sloan, she relinquishing her interest in all the estate of Joseph S. Neely, deceased, to the said J. J. and Harriet E. Blackshear, F. J. and James N. Winn; that he, F. J. Winn, had made a deed to her, but that James N. Winn had failed and refused, and Harriet E. Blackshear, as administratrix, could not make a deed, and it was impossible to get said deed made as agreed on between all the parties. That on final hearing of said cause it was ordered and decreed by the court that F. J. Winn, James N. Winn, H. E. Blackshear and H. E. Blackshear, administratrix of J. J. Blackshear, deceased, convey and make deeds in fee simple to Mary C. Sloan of the said lands described in complainant's bill, and situated in Leon county, Florida. That although defendant had not seen any deeds, he has reason to believe and does believe that they were made and delivered to Mary C. Sloan, as ordered by the said Superior Court at its October term, 1878, and that the said Mary C. Sloan has been in the peaceable possession of said lands from that date until after the master's sale thereof on the 5th day of August, 1889, and until this defendant took possession of the same in December, 1889, under and by virtue of his purchase at said sale. It is denied that complainants or either of them, as alleged in their bill, were in possession of the said lands in Leon county, and which were sold to defendant at the foreclosure sale; and it is alleged that although defendant lived on an adjoining plantation to said lands ever since the making of said decree in December, 1878, to his knowledge neither of the complainants has at any time set up any claim to the title or possession of said lands, or any part thereof, until after the commencement of

618 SUPREME COURT.

James N. Winn et al. v. Gillum B. Strickland.—Statement of Case.

his said foreclosure suit, although Mrs. Sloan not only rented out said lands and collected annual rents for the same, but raised large sums of money from time to time by mortgaging the same; that she borrowed money from defendant on a mortgage on the lands as far back as the ........... day of ............, 18.., which was duly recorded in the public records of Leon county, and again on the first day of June, 1884, she mortgaged said lands to William H. Hammond, to secure the sum of $1,206.45, and on the 10th day of June, 1884, mortgaged the same to defendant to secure the sum of $2,000; that notwithstanding the said acts of Mary C. Sloan, not one of the complainants interposed a claim to any part of said lands until after defendant filed the bill to foreclose his mortgage.

Defendant denies that the deed alleged to have been made by James N. Winn of his one-fourth interest in the lands in Leon county to himself in trust for F. J. Winn and Mary C. Sloan, in consideration of trust property derived from the estate of Thomas B. Winn, deceased, was ever made, and alleges that if such deed was ever executed it was void, the trustee and guardian having no authority without an order of court to appropriate the trust funds to the purchase from himself of property held in his own right for his *cestuis que trust*.

Defendant further alleges that he is informed and believes, and is ready to prove by the records of the Superior Court of Thomas county that said James N. Winn, F. J. Winn, H. E. Blackshear, and H. E. Blackshear, administratrix of J. J. Blackshear, deceased, conveyed to said Mary C. Sloan all their respective joint and several interests in and to all the said Florida lands for and in consideration of the interest which the said Sloan had and possessed in

what was known as the Neely lands and other property not held in trust, and that none of said complainants has any interest, nor have they had since 1887, in the said Florida lands, but that Mrs. Sloan took possession of said lands and has continued to exercise ownership over them, and has received money on them from rents and mortgages for a period of more than seven years, and until defendant went into possession under his purchase at said foreclosure sale.

It is admitted that complainants, by their attorney, appeared at the foreclosure sale and protested against the same. It is alleged that the sale was conducted openly and fairly after due notice, and if complainants thought the lands were selling for less than their value, they had an opportunity to bid for the same, and defendant would have been greatly pleased if they had sold for more than enough to pay his decree.

It is denied that the defendant used any unfair or improper means in obtaining possession of said lands; but it is alleged that he took possession under and by virtue of his purchase openly, fairly and peaceably, and rented the lands at the same rates that they had been previously rented, and that he kept many of the old tenants, brought in two new ones, repaired houses, paid taxes on the lands for the past year, and exercised other acts of ownership over the same, as he was advised and believed he had a right to do.

After replication, testimony was taken, and on final hearing the bill was dismissed. Complainants appealed to this court.

Reference will be made in the opinion to such parts of the testimony as is deemed necessary.

*John W. Malone*, for Appellants.

*D. W. Gwynn* and *Fred. T. Myers*, for Appellees.

MABRY, J., (*after stating the facts*):

The object of the bill in this case is the cancellation, as a cloud upon the title to the lands therein described, of the deed made under the mortgage foreclosure proceedings referred to in the statement filed with this opinion.

It is contended for appellee that appellants were not in possession of the lands when the bill was filed by them, and hence they have no status in a court of chancery. The lands in question are not wild or uncultivated, nor are they alleged so to be. It is essential that a complainant in such a case should be in possession in order to maintain a bill to remove an instrument as a cloud upon the title to his real estate. Sloan vs. Sloan, 25 Fla., 53, 5 South. Rep., 603; Haworth vs. Norris, 28 Fla., 763, 10 South Rep., 18; Patton vs. Crumpler, 29 Fla., 573, 11 South. Rep., 225.

Before giving our conclusion on the point presented, a statement of the testimony bearing thereon becomes necessary. Appellee introduced a certified copy of certain proceedings had on the chancery side of the Superior Court of the Southern Circuit of Georgia, for Thomas county. The object of the suit in Thomas county was to reform a deed executed by James N. Winn to J. J. Blackshear, in his own right and as guardian for F. J. Winn and Mary C. Sloan, minor heirs of Thomas B. Winn, deceased, and also to have a specific performance of certain agreements to convey lands in pursuance of an alleged division between the parties to the suit. F. J. Winn is complainant in the petition, and it is therein alleged that Elizabeth Winn, James N. Winn, Harriet E. Winn and Mary C. Winn were the heirs at law of Joseph S. Neely, deceased, and that Harriet E. had married James J. Black-

shear, who, by the then laws of Georgia, took titles to her interest; that in June, 1866, James N. Winn gave his certain deed to James J. Blackshear for himself and as guardian for F. J. Winn and Mary C. Winn, whereby the said James conveyed all his right, title and interest in and to all the lands comprising the home place of said Neely, situated in Thomas county, Georgia, and which are particularly described in the petition, and that a mistake had been made in describing the lands in said deed, and certain described lands situated in Thomas county were embraced therein that should not have been inserted, and certain other lands situated in said county intended to be conveyed were left out; that afterwards Mary C. married John H. Sloan before the death of decedent Neely, and since the act of 1866, and subsequently sold her interest in and to said lands to Harriet E. Blackshear, but did not give her deed for the same; that afterwards a division in kind of said lands was agreed upon and made between the heirs retaining an interest in the same, whereby Elizabeth Winn got a certain designated part, F. J. Winn got a certain other designated part, and James J. and Harriet E. Blackshear got the remaining part, and that although said lands were so divided, and possession taken ac cordingly, no deeds were exchanged or given between the parties; that John H. Sloan and James J. Blackshear had since died, and owing to the death of Blackshear, who acquired a third interest in said lands under the said deed from James N. Winn, and one-fifth interest therein under the then laws of Georgia, by right of his marriage with Harriet E., no titles could pass for his interest without an order of court; that all the other property of the said Neely estate had been duly and satisfactorily divided between the heirs

622    SUPREME COURT.

James N. Winn et al. v. Gillum B. Strickland.—Opinion of Court.

at law, and Blackshear left three children living who, with their mother, were the heirs of his estate. What the other property of the Neely estate consisted of, or how it was divided, other than above stated, is not set out in the petition.

It is further alleged that on the 10th day of June, 1859, Thomas B. Winn died leaving a will, a copy of which is attached to the petition, and at the time of his death was seized and possessed of certain described lands situated in Leon county, Florida, (being the same lands involved in the present suit), and that James N. Winn, F. J. Winn, James J. Blackshear and Harriet E. Blackshear had sold their interest therein to Mary C. Sloan, she relinquishing her interest in all of the estate of Joseph S. Neely, deceased, to said parties; that F. J. Winn had made her his deed, James N. Winn had failed and refused, and that Harriet E. Blackshear, as administratrix, could not make her deed, and it was impossible to get said deed made as agreed between all the parties when the contract heretofore referred to was made; that James N. Winn and Joseph S. Neely were the executors of the will of Thomas B. Winn, deceased, and the testator left certain real estate, known as the home place, situated in Thomas county, Georgia, particularly described, and a certain part of his personal property, to his widow Elizabeth Winn during her natural life, and the residue of his estate, both real and personal, together with the remainder interest in the property given to said widow for life, he gave and bequeathed to his four children, James N. Winn, F. J. Winn, Harriet E. Blackshear (formerly Harriet E. Winn) and Mary C. Sloan (formerly Mary C. Winn); that all the property except that given to the said widow for life was duly and satisfactorily divided between the said children,

but how the division was made is not further stated; that in December, 1870, James N. Winn gave his deed to James J. Blackshear, trustee for his said wife, and F. J. Winn and his wife Sarah, by which the grantor sold to said parties all his interest in and to the said home place, in which he had an undivided one-fourth interest in remainder under the will of Thomas B. Winn, deceased, and also all his interest in certain described lands situated in Thomas county, Georgia, and which Elizabeth Winn obtained as a distributive share from the Neely estate, and in which James N. had a one-fourth interest as a prospective heir of his said mother; that about the same time James J. Blackshear and wife, John H. Sloan and wife and F. J. Winn and wife gave deed to James N. Winn to their interests to certain designated portions of the said home place; that afterwards John H. Sloan and James J. Blackshear died, and still later Elizabeth Winn died, and after the death of the latter, the property known as the Winn home place, and the lots drawn by Elizabeth Winn from the Neely estate, were divided by the parties in interest and reduced to possession, but on account of the deaths of Blackshear and Sloan who, under the said deed from James N. Winn, were made trustees for their respective wives, the latter could not make titles of the entire interests in said lands to each other and to F. J. Winn without the consent of court. The parts that the respective parties got in the division of the Winn home place and the lots obtained by Elizabeth Winn from the Neely estate are particularly described in the petition. The prayer of the petition asks that a guardian *ad litem* be appointed for the minor heirs of James J. Blackshear, deceased, and that the deed to James J. Blackshear for himself and as guardian for F. J. Winn and Mary

624　　　　SUPREME COURT.

James N. Winn et al. v. Gillum B. Strickland.—Opinion of Court.

C. Winn be corrected in the particulars mentioned; that Mary C. Sloan be authorized and required to give deed to Harriet E. Blackshear in her own right and as administratrix of the estate of James J. Blackshear, deceased, to the lands allotted to him in the division of the Neely estate in right of his wife and in his own right under the said deed from James N. Winn, and to the lands allotted to Harriet E. Blackshear in the same division in her own right, the two interests as divided comprising certain designated lots situated in Thomas county, Georgia; that F. J. Winn give H. E. Blackshear a deed for all his interest in the same lands, and that H. E. Blackshear as administratrix of the estate of James J. Blackshear, deceased, and Mary C. Sloan be authorized and required to give deeds to F. J. Winn for all the interest of Blackshear, deceased, and Mary C. Sloan in and to the lands allotted to him in the same division, and particularly described; that H. E. Blackshear as beneficiary under the trust deed of James N. Winn and heir at law of Elizabeth and Thomas B. Winn, deceased, be required to give deed to Mary C. Sloan for all her interest in and to the lands allotted to her in the division of the Winn lands referred to, and situated in Thomas county, Georgia, and particularly designated; that F. J. Winn and his wife being the owners of a one-third interest of James N. Winn's interest under his deed to them, and F. J. Winn being an heir at law of Thomas B. and Elizabeth Winn, give deed to all their interest in the same lands to Mary C. Sloan, and that she, F. J. Winn and his wife offering to do the same, be required to give deed to H. E. Blackshear for certain described lots of land in the same division; and that H. E. Blackshear and Mary C. Sloan give deed to F. J. Winn and his wife for all the land acquired and

JUNE TERM, 1894. 625

James N. Winn et al. v. Gillum B. Strickland.—Opinion of Court.

allotted to them under the said deed of James N. Winn, and a deed to F. J. Winn to the lands acquired by him as heir of Thomas B. and Elizabeth Winn, and allotted to him in the division of the Winn estate. Process is prayed against H. E. Blackshear, Mary C. Sloan and James N. Winn, and the subpœna issued in the case contains on it an acknowledgment of due and legal service, a waiver of copy of bill, process and all other service, and a consent that judgment be taken at April term, 1876, and is signed by Hattie E. Blackshear, H. E. Blackshear, administratrix, Mary C. Sloan and Thomas E. Blackshear, guardian *ad litem* for minor heirs of J. J. Blackshear, deceased. The final decree in the cause, based upon a finding of facts by a jury, directs that the deed from James N. Winn to James J. Blackshear, in his own right and as guardian for F. J. Winn and Mary C. Sloan be corrected in certain particulars mentioned, as prayed for in the petition; that all the parties convey and make deeds in *fee simple* to Mary C. Sloan to the lands situated in Leon county, Florida, and certain designated lots in the eighteenth district of Thomas county, Georgia; that Mary C. Sloan, H. E. Blackshear in her own right and as administratrix of James J. Blackshear, deceased, and James N. Winn convey in fee to F. J. Winn certain designated lots situated in the county of Thomas; and that the several parties convey to Harriet E. Blackshear, administratrix of James J. Blackshear, deceased, certain designated lots situated in said county, as prayed for in the bill.

It does not appear from anything in the record before us that deeds were ever made to Mary C. Sloan to the Leon county lands in pursuance of the decree referred to, or that any of the deeds directed therein to

40

be executed were ever made, and except the record in said cause and the possession of the lands by Mrs. Sloan, to be noticed, and the testimony of James N. Winn as to a partition of the lands, there is no testimony on the subject of a partition or division of the lands mentioned in the decree between any of the parties. The record does not reveal any deed from James N. Winn conveying his undivided one-fourth interest in the Leon county lands to himself as guardian of F. J. Winn and as trustee under the limitations of the will of Thomas B. Winn, deceased, as alleged in the bill. James N. Winn, whose deposition was taken, states that such deed was made, and that it was in the hands of his solicitor, and could not be attached to his deposition; but no such deed was produced, and no further notice seems to have been taken of it in the disposition of this case. Winn states that the Florida lands had never been divided, and that Mrs. Sloan's interest therein was still undivided. Mrs. Harriet E. Blackshear is dead, but when she died does not appear. It is apparent that she was alive in November, 1878, when the decree mentioned was rendered. James N. Winn further states that he and his co-trustee, Neely, had possession and control of said lands up to the death of the latter, some time in 1863, and that he has continued in possession since. Some of the time, he states, the lands were cultivated under his supervision, he having an overseer to look after them, but for a considerable time he had permitted Mrs. Sloan to look after the renting of the place, as she was beneficially interested in the rents, and was nearer the lands. Her possession, he says, was by his permission, and she rented the lands to whom she pleased and as she pleased, and had been for a number of years renting them, collecting the rents and appro-

priating them as she saw fit. He further states that Mrs. Blackshear's interest in the profits of said lands was off-set by profits from other lands in Thomas county in which Mrs. Sloan had an interest. It appears from the testimony that Mrs. Sloan assumed the personal management of the lands in question, at least as early as 1877, and rented the same to tenants, collected the annual rents and appropriated them to her own use without accounting to any of the other heirs for any part of them. For a period of eight or ten years prior to 1890 all the tenants on the place were employed by Mrs. Sloan, and the rental contracts were made with her. She says James N. Winn knew that she was leasing the lands, but did not know the details, and never gave any express consent. In 1879 she executed a mortgage on the lands to appellee for $1,250, and this mortgage was paid, and in 1885 she executed two mortgages on the place, one to William M. Hammond for some twelve hundred dollars, and the other to appellee for two thousand dollars. Upon a foreclosure of said mortgages, appellee became the purchaser in August, 1889, the sale was confirmed and a deed delivered to him. Mrs. Sloan was a party defendant in the foreclosure proceedings, but the complainants in the present suit were not parties. At the time of the sale under foreclosure proceedings there were several tenants on the place under rental contracts with Mrs. Sloan, and the lease of a few of the tenants did not expire with the year 1889. Mrs. Sloan says she turned over these leases to James N. Winn as trustee, but it does not appear whether this was before or after the sale of the lands. Appellee lives upon lands adjoining the plantation in controversy, and some time about November, 1889, went upon the place, informed the tenants that he had become the

purchaser, and shortly thereafter entered into written contracts with all the old tenants and a few new ones for the rent of the place during the year 1890. The tenants testify that appellee informed them that he had bought the place and that they must rent from him. One witness testifies that he was sent for and informed by appellee that unless witness then entered into a rent contract he would be put off by the sheriff. Another says that he received word that unless he rented from appellee he would have to leave the place. According to the statements of some of the tenants, they hesitated about entering into contracts with appellee, and stated to him that they had agreed to rent from Mrs. Sloan, but they all went down to appellee's store near the place, and as it appears, voluntarily entered into the contracts for the following year. The amounts agreed to be paid for the rent by some of the tenants were some less than what they had paid Mrs. Sloan for the previous years; and some of the tenants state that appellee informed them that they should not be compelled to pay rent to both Mrs. Sloan and himself. Appellee testified that he was in possession of the lands when complainants filed their bill, which was on the 20th day of January, 1890, and that he took possession by going upon the lands in November, 1889, informing the tenants that he had bought the place, and renting the lands to the tenants then on the place and other new tenants for the year 1890; that the old tenants were willing to enter into rent contracts with him, and did so peaceably, and that the same rents were charged them that he rented other adjoining lands for; that he had no recollection of using the language as stated by the witness in reference to putting him off by the sheriff if he did not enter into a rent contract, and that he did not

threaten any of the tenants to induce them to rent from him.  The testimony shows that new tenants occupied portions of the lands under appellee, and that he had two wells dug, others cleaned out, and caused two cotton houses to be erected by the tenants on the premises.  Appellee says that about the first of January, 1890, while on the place he met James N. Winn and informed him of the sale of the place under the foreclosure proceeding, and that he (appellee) did not want him (Winn) to come on the place or interfere with the tenants.  James N. Winn testified that he was in possession of the place when the bill was filed, but, under the testimony, his claim of possession can rest alone upon the possession of the tenants under Mrs. Sloan.  He states that sometime in December, 1889, or January, 1890, he met appellee on the lands and informed him that the lands were in his (Winn's) possession as trustee, and that he must not interfere with the property or the tenants, and appellee stated that he had taken possession and intended to hold it, and that he did not want him (Winn) to come on the place again.  F. J. Winn testified that the lands were rented by Mrs. Sloan in 1888 to tenants who were on the place when it was sold, and that the same tenants agreed with him in November, 1889, to rent the place for 1890 for the same rent they had paid to Mrs. Sloan, and to pay the rent to him as agent for James N. Winn.  According to the testimony of the tenants examined, they rented from Mrs. Sloan, and none testify that they rented or agreed to rent from Winn.

The foregoing is in substance the material part of the testimony.

Appellee moved to exclude the copy of the record from the Superior Court for Thomas county, on the ground that it was irrelevant, illegal and improper

testimony.  When a court of chancery has acquired jurisdiction over the person of a party, in a proper case it may by virtue of its power to coerce obedience to its decrees, enforce the performance of contracts relating to lands situated in another State.  The courts of one State, however, have no power to divest title to real estate situated in another State, or to appoint commissioners with authority to transfer title to such property.  The court can only act in such cases upon the person of the holder of the legal title in the foreign jurisdiction, and if such holder fail to convey by proper deed the legal title in obedience to a decree commanding it to be done, no effect can be given in the foreign jurisdiction to the decrees so far as a conveyance of the legal title is concerned.  Although the decree in such case can not of itself operate to transfer the title to lands situated out of the State, yet it is binding upon the consciences of the parties and may conclude him in respect to all matters properly adjudicated and determined by the court.  Such is the effect given to foreign judgments and decrees by the Constitution of the United States, in providing that full faith and credit shall be given in each State to the judicial proceedings of another State, and the act of Congress directing the manner in which such proceedings shall be proved and the effect thereof.  Burnley vs. Stevenson, 24 Ohio St., 474; Page vs. McKee, 3 Bush, 135; Short vs. Galway, 83 Ky., 501; Newton vs. Bronson, 13 N. Y., (3 Kernan), 587; Morris vs. Hand, 70 Texas, 481; Massie vs. Watts, 6 Cranch, 148; Watts vs. Waddle, 6 Peters, 389; Davis vs. Headley, 22 N. J. Eq., 115; Penn. vs. Lord Baltimore, 2 White & Tudor's Leading Cases in Equity, 1806, S. C., 1 Vesey Sr. 444; City Insurance Company of Providence vs. Commercial Bank of Bristol, 68 Ill; 2 Freeman on Judgments,

secs. 559-565. It is always essential that the court undertaking to enforce the performance of such con-tracts, should have jurisdiction of the persons of the parties, and if it proceed without acquiring such juris-diction, either by the service of proper process or per-sonal appearance, no effect whatever can be given to such decree. Porter vs. Bevill, 2 Fla., 528; Braswell vs. Downs, 11 Fla., 62; Drake vs. Granger, 22 Fla., 348; Sammis vs. Wightman, 31 Fla., 10, 12 South. Rep., 526.

F. J. Winn was complainant in the suit of the Su-perior Court for Thomas county, and the court had jurisdiction of his person. In his petition he states that he had sold his interest in the Leon county lands to Mrs. Sloan, and had made her a deed to the same. Although no deed from him to her for his interest in the lands was produced, and nothing said about it in the testimony, we can not doubt that such deed was made as he states. His long acquiescence in her re-ceipts of the rents and management of the place is corroborative proof of the fact that he had made such deed. At all events he is estopped, we think, by his own averments from asserting any claim to an interest in said lands as against Mrs. Sloan, or those who have acquired title from her. We conclude, therefore, that Mrs. Sloan is shown to be the owner of the undivided one-fourth interest of F. J. Winn in the lands in her own right, as he asserts that said interest was conveyed in consideration of her interest in the Neely estate that was not trust property. The record was clearly com-petent evidence as against F. J. Winn.

James N. Winn, although named in the proceedings as a party defendant, was not served with notice, nor did he appear in the cause, so far as shown by the record before us. It can have no effect whatever on

632 SUPREME COURT.

James N. Winn et al. v. Gillum B. Strickland.—Opinion of Court.

him in the present proceeding. He, however, does not claim in the bill to own any interest in the lands in his own right, and the suit as to him is in his representative capacity as executor and trustee under the will of Thomas B. Winn, deceased, and under a deed made to himself as guardian of F. J. Winn and trustee for the beneficiaries under said will. There is no sufficient showing before us that he executed such deed. He says that the deed was in the hands of his solicitor, but it was not produced, and the allegation of the bill in this respect seems to be abandoned.

The answer admits that all the property of the Winn estate went into the hands of the executors and trustees under the will, but alleges that the interests of all the heirs were conveyed to Mrs. Sloan, and the only evidence introduced to sustain this allegation, aside from the possession and pernancy of the profits by her, is the record of the proceedings in Thomas county. We are unable on the showing before us to hold that the interest of Mrs. Blackshear in said lands was conveyed to Mrs. Sloan, or that the latter owned such interest as against the children of the former. After devising some property situated in Thomas county, Georgia, to Elizabeth Winn, the widow of the testator, the residue of his estate is bequeathed equally to his children, and as to the daughters the will provides that "Joseph S. Neely and James N. Winn be and are hereby ordained trustees for my daughters, to receive and control for them their distributive shares, free from the control of their husbands, should they marry; and should said daughters die with children, then this trust property I decree to vest absolutely in said children; if they die childless, then to revert to my heirs at law exclusive of the said Betsie Winn, hereinbefore specially previded for; and I furthermore

direct if said real estate be sold for the purpose of division, that the proceeds be equally divided among my children, and that the said Joseph S. Neely and James N. Winn receive and invest for my daughters their respective portions of the trust funds realized from said sale in property to be held subject to the same trusts and free from any aforesaid marital rights that might otherwise accrue." Authority is also given by the will to the executors to sell the estate for division if it became necessary. Mrs. Blackshear had under the will a beneficial one-fourth interest in the property for life, with a remainder to her children, she having died leaving children. James N. Winn is the surviving trustee under the will, and, as we have before seen, he was not before the court when the decree contained in the record was made. Although named as a party in the proceedings, it is in his own right, and not in the representative capacity of trustee or executor, but the failure to acquire jurisdiction over his person renders the proceedings ineffectual as to him in any capacity. It is said in Wilson vs. Russ, 17 Fla., 691, that "a trustee in whom is vested the legal estate is a necessary party in all proceedings affecting the estate, where there is a remainderman, for the trustee is liable for the proper care and preservation of the property." Braswell vs. Downs, *supra*. But if the presence of Mrs. Blackshear, the *cestui que trust* for life, before the court be deemed sufficient to authorize a decree for a conveyance of her interest in the property under the will of Thomas B. Winn, deceased, the foreign decree itself, in the absence of a conveyance in pusuance thereof, can not have the effect under the rule above stated to transfer the title to lands in this State. And James N. Winn, the only witness on the subject, states that the Florida lands

had never been partitioned. The petition in the Thomas county suit alleges that James J. Blackshear left three children, and a guardian *ad litem* is asked to be appointed for them, but their names are not given, and no process was prayed against them. A person, it appears, signing his name as guardian *ad litem* of the minor heirs of James J. Blackshear, deceased, acknowledged service of the subpœna, and consented that judgment might be entered against the minors in the case, but there is nothing to show that he had been appointed guardian *ad litem* for any minors, and no answer for them was filed. Under such an irregular proceeding we can not hold that the Blackshear complainants in the suit before us were bound by the decree. Braswell vs. Downs, *supra*. But still further, there is no evidence that any deed was ever made to Mrs. Sloan, in pursuance of the decree rendered, by any of the children of Mrs. Blackshear, or any one for them, and the decree itself does not divest their titles to the lands in this jurisdiction.

It can not be successfully maintained on the record before us that Mrs. Sloan acquired title to the lands in question by adverse possession as against James N. Winn as trustee, or Mrs. Blackshear, or her children. It is true that Mrs. Sloan for more than seven years before the institution of the present suit had rented out the lands and appropriated the rents to her own exclusive use, but the possession of one *cestui que trust* is regarded in law as the possession of the trustee, and also of a co-*cestui que trust*. 1 Perry on Trusts, sec. 863. Such would certainly be considered the relation between the parties, in the absence of any clear and manifest hostility on the part of the occupying *cestui que trust* brought home to the trustee and the other *cestui que trust*. The law on the subject of

adverse possession between trustee and *cestui que trust* has been so thoroughly considered by this court that new citations of authority become unnecessary. Braswell vs. Downs, *supra;* Bloxham, Governor, for use of, vs. Hooker, 19 Fla., 163; Anderson vs. Northrop, 30 Fla., 612, 12 South. Rep., 318. There is no hostility of possession shown between Mrs. Sloan and the trustee, James N. Winn, and both testify that the possession and management of the place by the former were by the permission of the latter. Winn says that Mrs. Blackshear's interest in the rents of the lands was off-set by profits of other lands in Georgia in which Mrs. Sloan had an interest. If this be true, Mrs. Sloan was not claiming adversely to Mrs. Blackshear. If the management of the place and the exclusive receipts of the rents by Mrs. Sloan be regarded as an adverse holding as against Mrs. Blackshear, it does not appear how long such possession continued before the death of the latter, and under the will her interest was only for life, with remainder to her children. They would not be affected by the statute of limitations even if the possession had been adverse as against Mrs. Blackshear until after her death (Anderson vs. Northrop, *supra*), and it does not appear that she died seven years before the filing of the bill.

Whatever interest Mrs. Sloan had in the lands, it is evident, passed to appellee under the foreclosure sale, and, as we have seen, she acquired the undivided one-fourth interest of F. J. Winn in the absolute right, and it is clear that she also had a beneficial interest for life in another one-fourth part. Appellee acquired the legal title to the absolute interest, and the effect of the mortgage sale was to transfer the beneficial interest in the land for life. Wilson vs. Russ, *supra*.

For appellant it is contended that as the possession of Mrs. Sloan was that of her trustee, James N. Winn, the tenants put on the place by her must be regarded as his tenants, and that appellee could not acquire possession rightfully by inducing them to attorn to him without a surrender of the tenancy. The general rule that where a tenant disclaims holding under his landlord, from whom possession was received, and attorns to a stranger, the attornment is void and does not operate as a disseizen of the landlord, is invoked. Blue vs. Sayre, 2 Dana, 213; Rogers vs. Boynton, 57 Ala., 501. While it is true that a tenant can not dispute or gainsay the title of the landlord so long as it remains as it was at the time the tenancy commenced, and no fraud has been practiced in securing it, yet he may show that the title under which he entered has expired, or has been extinguished by operations of law. Robertson vs. Biddell. 32 Fla., 304, 13 South. Rep., 358. A sale of the landlord's interest in the leased property puts an end to his rights under the lease. Mrs. Sloan had at least an absolute one-fourth interest in the property, and it is not true that her possession was entirely the possession of the trustee. She held in her own right as to an interest in the property, and to the extent of this interest appellee became owner, and was as much entitled to possession as any other joint owner of the property. While he may not be entitled to possession of the lands as against the trustee as to the beneficial interest acquired, he would clearly be so as to the absolute interest. The fact that appellee's deed called for the entire interest in the property, would not deprive him of the interest actually acquired under it, although it could not be effective to convey the whole. It is entirely clear from the evidence that appellee before the bill was filed as-

sumed exclusive possession of the land under his purchase at foreclosure sale, and denied any right of possession to the complainants. The possession was taken not solely by entering into rent contracts with tenants on the place at the time of purchase, but by putting new tenants on the place, and denying to appellant James N. Winn any right to interfere with the place. Doe vs. Clayton, 81 Ala., 391, 2 South. Rep., 24. Such an assumption of exclusive possession would authorize an action of ejectment on the part of other joint owners to recover their interest. Gale vs. Hines, 17 Fla., 773. We think the bill was properly dismissed, because none of the complainants were in such possession of the lands in question as to give them a standing in a court of equity for the purpose of maintaining a bill to remove a cloud from the title to real estate, and an order will be made affirming the decree rendered in the Circuit Court.