### STEM v. KEMP et al.

No. 8130—Opinion Filed Dec. 22, 1919.

Rehearing Denied Jan. 27, 1920.

(Syllabus by the Court.)

**1. Landlord and Tenant—Estoppel of Tenant to Dispute Title.**

While a tenant cannot dispute his landlord's title so long as it remains as it was at the time the tenancy commenced, he may show that such title has, during the tenancy, expired or been extinguished.

**2. Same—Oil and Gas Lease—Estoppel of Lessee.**

Where a party entered into possession of a tract of land as lessee under an oil and gas lease, and during the tenancy the title of his lessor is extinguished by a valid judgment, the lessee is not estopped from asserting such extinguishment in an action thereafter commenced by his lessor for the royalties agreed to be paid under the terms of the lease.

Error from District Court, Muskogee County; Geo. C. Crump, Assigned Judge.

Action by Frederick B. Stem against E. Rogers Kemp and others. Judgment for defendants, and plaintiff brings error. Affirmed.

Malcolm E. Rosser, William S. Cochran, and Frank Applegate, for plaintiff in error.

West, Sherman & Davidson, and J. P. O'Meara, for defendants in error.

RAINEY, J. This was an action filed in the district court of Muskogee county, by Frederick B. Stem against E. Rogers Kemp, Kanawha Oil & Gas Company, and the Prairie Oil & Gas Company, to recover royalties alleged to be due under the terms of an oil and gas lease from the plaintiff to Kemp. The material allegations in the plaintiff's pe-

tition are that on January 30, 1908, plaintiff was the owner and in actual possession of the land in controversy, and that on said date he executed an oil and gas lease to the defendant Kemp, by the terms of which Kemp agreed to pay to the plaintiff one-eighth of all the oil which might be produced therefrom, and also to assign to .the plaintiff an undivided one-fourth interest in the contract after the original expense of developing the property was paid. The petition further alleges that Kemp entered into possession of said premises under said lease, developed the same, and during the years, 1908, 1909, 1910, 1911, 1912, 1913, and 1914, he and his assigns produced large quantities of oil from said land; and that prior to October 1, 1908, defendant Kemp and his assigns produced sufficient oil to pay all expenses of development, and that since said time said defendants have converted the oil to their own use. Plaintiff prayed for judgment against the defendants for the value of the oil produced on the premises, for an accounting, and a decree directing the defendants to assign and transfer to the plaintiff an undivided one-fourth interest in the lease contract, and asked that defendants be required to pay to the plaintiff the one-eighth of all oil produced from the land after the bringing of the suit.

In his answer, defendant Kemp denied all the material allegations of plaintiff's petition, except those specifically admitted. He admitted the execution and delivery of the lease but denied that the plaintiff delivered possession of the premises. He further alleged that, at the time of the execution of said lease, the plaintiff had a deed from one Ben Adams, the father of Jessie Adams, the allottee of said land; that the defendant secured an oil and gas lease from the brothers and sisters of Jessie Adams, who were the heirs of Mary Adams, deceased, who, under the Creek law, was the sole heir of Jessie Adams, and that after the execution of said leases and after the execution of the lease from plaintiff, defendant learned that the deed secured by the plaintiff from Ben Adams was secured by fraud and misrepresentation on the part of the plaintiff, of which the defendant had no knowledge at the time of the execution of the lease to the defendant; that upon learning this fact the defendant procured an oil and gas .lease from the said Ben Adams for which he paid a valuable consideration; that he informed the said plaintiff of said facts, and shortly thereafter said defendant entered on the premises and began operations for oil and gas under the leases he had obtained from the heirs, and that his possession was under them, and not under the plaintiff. The defendant further alleged that on or about the 15th day of October, 1908, Ben Adams filed suit in the district court of Okmulgee

county, Oklahoma, against the plaintiff in this action, Frederick B. Stem, in which he sought to recover possession of the lands on account of the fraud practiced upon him in the procuring of said deed; that said cause went to judgment in favor of the said Ben Adams, and the said plaintiff's deed was cancelled, and said judgment was thereafter affirmed by the Supreme Court of this state, and that by virtue of said judgment all the pretended right, title, and interest of the plaintiff in this action, Frederick B. Stem, was extinguished. The defendant Kemp further alleged that oil was first produced on the land in July, 1908, and that prior to the institution of this suit the plaintiff never asserted or claimed any interest in the oil produced from the premises, although he knew that the defendant and his co-defendants were paying royalties to the said heirs of Ben Adams and Mary Adams. The defendant further pleaded the statute of limitations of two, three, and five years. The other defendants adopted the allegations of the answer of defendant Kemp. Plaintiff filed a reply, which was in effect a general denial of the allegations in the answers. The case was called for trial on October 26, 1916, at which time the plaintiff read the petition and, by his counsel, made the following statement:

"The evidence will show that at the time the lease upon which this suit was brought was executed, the plaintiff, Frederick B. Stem, was in possession of the land in controversy, claiming to be the owner, and that he had it enclosed by a fence, and that the defendants, or some of them (I think probably the evidence will show the Kanawha Oil Company), entered upon said lands under said lease by the permission of the plaintiff and proceeded to develop same. The evidence will also show that at the time the lease was executed there was pending a suit against Frederick B. Stem to recover the land, and that three and one-half years (3½) after the lease was executed and long after the defendants or some of them, had entered upon the land and developed it, the plaintiffs in that suit recovered a judgment to put the plaintiff off of the lands. The evidence will also show that the defendant Kemp knew of the existence of the suit at the time he took the lease, and the litigation is referred to in the lease contract. We believe we are entitled to a judgment upon these facts. The lease provides that the lessee shall render statements of accounts, and we will ask that an accounting be had."

Thereupon the following proceedings took place:

"By the Court: I believe that if this is all the statement that you have to make, if the stenographer will take it down, I will render judgment against you.

"By Judge Rosser: I make the statement that at the time this lease was made we were in actual, peaceable, quiet possession of

this land, and that there was a suit pending, but that the defendants knew of that suit and that the lease states that they are to pay the expense of that litigation, and thereby recognizes the fact that there was litigation pending, and there was no other condition appearing in the contract.

"By the Court: Under the statement of the plaintiff and the pleadings, I will render judgment for the defendants.

"By Judge Rosser: I do not understand the court.

"By the Court: Do I understand you to say, Judge Rosser, that at the time the oil and gas lease was executed by the plaintiff and the defendant E. Rogers Kemp, that the plaintiff was in possession of the land in controversy?

"By Judge Rosser: Yes, sir.

"By the Court: But that he did not own said land at that time?

"By Judge Rosser: I say there was a suit pending against F. B. Stem, and that subsequent to the execution of said lease, and in that suit the plaintiff was divested of his title. About three years later the plaintiff was divested of his title, in the suit that was pending at the time the lease contract was signed by the plaintiff and the defendant, and all parties had notice; that plaintiff was in possession of the land at that time and remained in possession—rather the defendants remaining in possession taken under him, for about three and one-half years.

"By the Court: I will have to enter judgment for the defendants. Who are the parties who own the land at the time of the decree?"

"By Judge Rosser: This land was allotted to Jessie Adams; she was dead at the time the land was allotted; she was dead in 1901. The proof in this case will show that at the time this lease was made Stem was in the peaceable possession of the land and it was enclosed by a fence; at the time when these parties entered to develop the land they entered through a gate, by Mr. Stem's permission, and they remained on the land and developed it with his permission for about three and one-half years. At the time the lease was made there was a controversy pending, which was known by the defendants at the time, and if it was not pending then the suit was brought within a few months afterwards by a man by the name of Adams for this land, and in 1911 Adams obtained a final judgment and obtained possession of this land as a result of that suit. I think these are the facts, the judgment cancelled the deed, and the final judgment was entered in October, 1911. During all the time from the time this lease was made until that time the defendants were in possession of this land under this lease and by permission of Stem, who was in actual possession of the land.

"By the Court. And the only thing that you claim in this suit, then, is this: That because your plaintiff made an oil and gas lease to the defendants and put them in possession, that you ought to have the rents for three years off of some one else's property?"

"By Judge Rosser. Yes, sir; for two reasons; the first one: The plaintiff—the defendants, cannot deny their lessor; there must be an actual or constructive eviction; knowing that some one else owns it is not sufficient; paramount title is not an eviction until they are confronted with actual notice (process.)"

"By the Court: The court holds that from the pleadings and statement of plaintiff that the plaintiff does not state and cannot prove a cause of action against the defendants, and it is the judgment of the court that the judgment shall be entered for the defendants upon the pleadings and statement made by plaintiff.

"And there was no evidence admitted upon the trial of said action."

Judgment was thereupon entered for the defendants; motion for a new trial was duly filed and overruled; and the case has been appealed to this court by Frederick B. Stem, as plaintiff in error, to review the action of the trial court.

Counsel for plaintiff in error say in their brief: "There is only one question in this case, and that is whether under the terms of the lease, the defendants, having taken possession thereunder from the plaintiff while he was in possession, are required to pay rent while their possession under plaintiff continued"—and invoke in support thereof the familiar and well established rule that a tenant will not be allowed to dispute the title of his landlord.

Assuming, without deciding, that the relation of landlord and tenant exists between the lessor and lessee in an oil and gas mining lease, and that the principles applicable to the relation of landlord and tenant control this case, was the plaintiff entitled to recover? We think not, for the reason that there is a well-recognized exception to the general rule that a tenant cannot dispute his landlord's title, which is, that the tenant may show that his landlord's title has expired or been extinguished subsequent to the commencement of tenancy. This principle has been applied by this court in the case of Indian Land & Trust Co. v. Clement, 22 Okla. 40, 109 Pac. 1089, which case, we think, is analogous in principle to the instant case and is decisive thereof. The facts of that case disclose that the land, the possession of which was in controversy and for which rent was claimed, was the allotment of one Jennie

Peter, who, by two separate contracts, executed on the 3rd day of September, 1902, and the 19th day of March, 1903, respectively, leased the land to the Wewoka Realty & Trust Company for a term of five years, beginning January 1, 1903, which company, on December 10, 1902, leased the same to H. B. Gooch for a term of five years, beginning January 1, 1903, for an annual rental of $40. On December 30, 1902, Gooch assigned his lease to the Indian Land & Trust Company, from whom the defendant Clement rented the land for the year 1903. Both before and after January 1, 1904, the Wewoka Realty & Trust Company notified Gooch that the annual rental under his contract would be due January 1, 1904, and demanded payment thereof. On January 11, 1904, the suit was instituted, and on the same day the Wewoka Realty & Trust Company served notice on Clement to vacate the premises. On the next day said company served a written notice on Gooch notifying him that they elected to forfeit his contract for failure to pay the rental under the contract. Thereafter, on January 16, 1904, the said company entered into a contract with the defendant Clement, by which it rented him the land for a period of four years, beginning January 1, 1904. On the 20th day of the same month the Indian Land & Trust Company tendered the Wewoka Realty & Trust Company the rent due January 1, 1904, and the interest due thereon from the date due to the time of the tender, which was refused by the Wewoka Realty & Trust Company. Although in that case it was held that there was no forfeiture of plaintiff's estate under certain provisions of the statute therein discussed, this court, in the course of an opinion by Justice Hayes, stated the law applicable to the case as follows:

"The defense relied upon by defendant in this case is that plaintiff's estate in the premises had been forfeited by it prior to the beginning of this action, and if he is correct in this contention, his defense is a good one; for, while it is a general and familiar rule that a tenant shall not be allowed to dispute the title of his landlord, there is the well-established exception to the general rule that a tenant may show that his landlord's title has expired or been extinguished since the creation of the tenancy. The exception to the rule is as well established as the rule itself."

In support of the rule thus announced, the court cites the cases of Farris v. Houston, 74 Ala. 162; Winn v. Strickland, 34 Fla. 610; Born & Co. v. Stafford, 93 Ill. 10; Bettison v. Budd, 17 Ark. 552; Earle's Adm'rs v. Hale's Adm'rs, 31 Ark. 470. See, also, Walchi v. Johnson, 27 Okla. 518, 112 Pac. 989. At

another place in the opinion the court stated the question to be determined in the case before it was "whether plaintiff's rights under its lease with the Wewoka Realty & Trust Company had become forfeited subsequent to the beginning of defendant's tenancy, and prior to the institution of this suit."

It appearing in the case at bar from the pleadings and opening statement of counsel that the plaintiff's title had been extinguished by the judgment of the district court, which was affirmed by the Supreme Court, subsequent to the commencement of Kemp's tenancy and prior to the commencement of this action, the case falls within the exception to the rule, and plaintiff is not entitled to recover.

The judgment of the district court is, therefore, affirmed.

OWEN, C. J., and KANE, JOHNSON, HIGGINS, and BAILEY, JJ., concur.