## PHILLIPS PETROLEUM CO. v. ECKROAT et al.

No. 22992. May 14, 1935.

Rehearing Denied June 18, 1935.

R. H. Hudson and R. L. Foster, for plaintiff in error.

Willingham & Fariss, for defendants in error.

PER CURIAM. This was an action at law, commenced in the district court of Oklahoma county, Okla., by Frank P. Eckroat and William M. Eckroat, as plaintiffs, against Phillips Petroleum Company, as defendant, to recover the sum of $1,212.62, the cash price or bonus for certain oil and gas leases or contracts, authorizing exploration for oil and gas, and production of same, if found, upon two small strips of land within the corporate limits of Oklahoma City, Okla.

The case was tried before the court, without the intervention of a jury, and judgment was entered in favor of the plaintiffs against the defendant for the full amount of demand. From that judgment the defendant prosecutes this proceeding in error. Parties are referred to as they appeared in the trial court.

The plaintiffs' petition sets forth two causes of action. The first cause is predicated upon an alleged agreement on the part of the defendant to pay plaintiffs the sum of $591.42, for a community oil and gas lease on a strip of land between lots 1 to 12, inclusive, of block 19, of Eckroat's addition, and block 2 of Schilling's addition to Oklahoma City. The second cause is upon a like agreement whereby defendant was to pay plaintiffs the sum of $621.20 for a like lease on the strip of land between block 20 of Eckroat's addition and De-Boult's subdivision of lots 1 to 16, of block 1, of Schilling's addition to Oklahoma City. Plaintiffs allege that on May 30, 1930, they were the owners of the respective strips of land, and about that date executed lease contracts thereon, under an arrangement whereby owners of the adjoining property joined therein, with the understanding that the leased premises were to form two "drilling areas" in compliance with ordinances of the city; that the defendant acquired its rights under such leases, and made application for and secured permits from the city to drill oil and gas wells on each of the "drilling areas," moved its machinery and drilling equipment upon each of such areas, fenced the strips of land owned by plaintiffs, made excavations thereon, and erected thereon a portion of its machinery for drilling of an oil and gas well in each of the areas; and that the defendant failed to pay the agreed price or bonus, and in December, 1930, disclaimed liability for such bonus.

The answer of the defendant was as to each cause of action separately, but the defenses were substantially the same. It de-

nied that plaintiffs were the owners of the land described in the petition; alleged that plaintiffs represented they were the owners of the land, and upon such representations were permitted to join in the lease; admitted that it agreed to pay a bonus for the lease, subject to approval of title by defendant's attorneys: that the title to property was examined by defendant's attorneys, who reported that plaintiffs did not own the land, and alleged that in truth and in fact plaintiffs did not own the land and never had owned it; admitted that it had not paid the bonus and disclaimed liability therefor. The answer as to plaintiff's first cause admitted that a permit to drill an oil and gas well was issued, and that defendant drilled a well upon the area; and, as to the second cause, admitted that defendant secured a permit therefor and commenced the drilling of a well upon the area.

The plaintiffs in their reply alleged that defendant, having obtained possession of the land under agreement with plaintiffs, and still retaining the possession of the land and the benefits of the contract, is estopped to deny plaintiff's title to the property.

The defendant in this court contends: (1) That plaintiffs were bound to furnish a merchantable title; (2) that the evidence is conclusive that the land in question was dedicated to the public by express dedication and by user, and that plaintiffs have no title thereto; and (3) that even though plaintiffs have title, it is not a marketable one.

The plaintiffs in this court contend; (1) That in an action at law tried to the court without a jury, same will not be reversed where there is evidence to sustain the judgment; and (2) that the defendant is estopped to deny plaintiffs' title.

From these contentions in this court, it is evident that the only assignment of error relied upon for reversal of the judgment of the trial court is that the judgment is not sustained by sufficient evidence and is contrary to law. The defendant assigns other errors, but its brief is confined to this one assignment of error.

■■ The plaintiffs introduced in evidence the original amended plat of Eckroat addition to Oklahoma City (plaintiffs' exhibit 4, R. pp. 117 to 121); this was identified by the witness Frank Bailey, deputy county clerk of Oklahoma county, who said it was the original of said amended plat, and that it was kept in the lower vault of the office of the county clerk. The defendant intro-

duced a certified copy of this amended plat (defendant's exhibit 7, R. p. 135). These instruments appear in the record or casemade by photographic copies. One of the strips of land in question lies south of lots 1 to 12, inclusive, in block 19, and the other strip of land lies south of block 20, as shown by the amended plat aforesaid, and these strips are a part of the strip extending the full width, east and west, of the amended plat, at the south boundary thereof, which is 16 feet wide at the east end and 6 feet wide at the west end. On the original of the said amended plat a continuous line is drawn around this strip, except at the east end, which is open. On the certified copy of this amended plat, the north boundary line of this strip, instead of being a continuous line, is broken at Ohio street and College street, and at the two north and south passages, deemed to be alleys. If the original of this amended plat is to govern, and this court is of the opinion that it should, because it is impossible to say what errors were made in the drafting of the certified copy, then there is an ambiguity as to the extent of the dedication intended. All the marks and lines upon this amended plat, as well as the written dedication, must be considered, and if possible such an interpretation should be followed as will give effect to all lines and statements. There are differences in other lines that appear upon a comparison of the original of the amended plat with the certified copy thereof, which can only be explained upon the theory that the draftsman who made the certified copy endeavored to improve upon the original.

The trial court, in its admission of evidence, evidently did so upon the theory that the original of the amended plat was ambiguous. The plaintiffs and the defendant, in the trial court, both introduced testimony as to contemporaneous and subsequent acts of the parties, and the use of the strips of land in question. As to users, the plaintiffs introduced evidence to show that the strips of land had not been used by the public; and the defendant introduced evidence to show that the same had been used by the public as an alley.

The unbroken line along the north boundary of this strip, as shown by the original amended plat, indicates that the dedicators did not intend for the public to pass from Ohio and College streets into this strip, and did not intend access from the alleys running north and south into this strip. Either the unbroken line on the north of the strip in question, or the opening at the east end,

was an error. All alleys shown on the original amended plat are 20 feet wide, and this court cannot presume that the dedicators intended the leaving of a blind alley 16 feet wide at one end and 6 feet wide at the other end, when the marks and lines on the original amended plat are taken into consideration.

In the trial of this case, the court evidently had in mind the case of Minton et al. v. Smith, 102 Okla. 79, 227 P. 75, wherein it was held:

"Where a party files a plat of certain lots, blocks, streets, and alleys, the intention of the owner in making the plat is to be ascertained from all the marks and lines appearing thereon, and if possible such an interpretation should be followed as will give effect to all the lines and statements.

"The question whether an owner intended to dedicate his land is one of fact, but in determining the question, the intention to which the court looks is not one hidden in the minds of owner, but one manifested by his act.

"A dedication may be made by a survey and plat alone, without any declaration, either oral or on the plat, when it is evident from the face of the plat it was the intention of the proprietor to set apart certain grounds for use of the public.

"When the evidence produced to show the dedication by a map or plat and the statements thereon are ambiguous or doubtful as to the extent of the dedication intended, recourse may be had to the contemporaneous and subsequent acts of the parties to show their intention in, and the construction put by them, on the dedication."

It is evident from the record or case-made that the amended plat, according to the lines and statements thereon, is ambiguous as to the strips of land in question. There is evidence that plaintiffs' title to the strips in question was derived by inheritance from their father, John Eckroat, and by conveyance from their mother, Mary Eckroat. John Eckroat, in his lifetime, and Mary Eckroat, his wife, filed the amended plat of said Eckroat addition, and made the dedication. There is evidence to support the finding of the trial court that plaintiffs were the owners of the property described in their petition.

This holding is not in conflict with the opinion of this court in the case of Miliken v. Smith, 120 Okla. 211, 251 P. 84, in which it was held that the plat of Palmer Highland addition to the city of Pawhuska was unambiguous. This case involved a strip of land 11 blocks long and 30 feet wide on the north of the addition, denominated "north boundary reserve No. 2," which was inclosed by solid lines with no street opening into it.

■ It is also contended by the defendant in this court that there having been a former plat of the same lands embraced in the said amended plat, the strips in question were thereby dedicated to the public as an alley, and that there has not been a proper vacating of that former plat.

This former plat was introduced in evidence by the defendant (defendant's exhibit 6, R. pp. 131 to 134), and was evidently filed by John Eckroat and Mary Eckroat, his wife, the owners of the land, on or after June 6, 1904, as that was the date the certificate of surveyor was acknowledged; the date of the filing is not shown. The dedication upon this former plat recited that the owners had caused the land embraced in the description to be surveyed into blocks, streets, and alleys, and dedicated the streets and alleys to the public. This former plat shows that the land was not platted into lots, and there are no alleys shown on the same, unless it be the strip of land south of blocks 18, 19, and 20, which is shown to be 10 feet wide at the east end and width at west end not shown. The said amended plat, which has heretofore been discussed, divided the blocks into lots, and is shown to have been filed in the office of the now county clerk on April 12, 1906, and embraced the same land as the said former plat, but differed as to the width of the strip in question, and in some other particulars.

It is not contended that any part of the land embraced in the former plat was ever sold by the original proprietors who filed the amended plat, and the territory embraced was not taken into the boundary of a municipality until February 20, 1907, and there is no evidence to show user by the public or by any individual other than the proprietors who filed the former plat, up to the time of the filing of said amended plat. An offer to dedicate was made by the filing of the former plat, but the dedication was not accepted by the public or by any person for the public, or by any municipality, until after the filing of the amended plat—in other words, no rights had vested in reliance upon the dedication contained in the former plat until after the filing of the amended plat.

The rights of the proprietor or proprietors

of the whole or any portion of a plat within any incorporated town or city to vacate the whole or any portion thereof are not involved in this case. The land embraced within the said former plat, in the instant case, was not within any incorporated town or city until after filing of the amended plat.

Section 6150, O. S. 1931, which is identical with section 588, Wilson's Rev. & Ann. Stat. 1903, provides that any plat of any subdivision of land may be vacated by the proprietors thereof at any time before the sale of any lots therein by a written instrument declaring the same to be vacated, duly executed, acknowledged or proved and recorded in the same office with the plat to be vacated. And there is no statute in Oklahoma providing that a dedication by plat can be withdrawn or changed only by vacation of the plat in accordance with the provisions of the statute. In the case of Stillman v. City of Olean, 161 N. Y. S. 591, it was held:

"The original owner, who filed a map, and his grantees, had the right to file a map superseding it, and showing different street locations, at any time before the streets designated therein were accepted by the city."

It is the opinion of this court that the statutes do not preclude a proprietor from changing his offer to dedicate parts of a subdivision of land by an amended plat comprising the same territory included in a former plat, before sale of any part of the land, and before acceptance of the dedication by the public or by bringing such subdivision of land within the corporate limits of any city or town. And this court holds that, if a change is made by the proprietor or proprietors in an offer of dedication, made by the recording of a plat, before acceptance, by the filing of another plat of the identical territory, the same is a revocation of the former offer and a new offer of dedication.

The question of intention in matters of dedication is one of fact, and the finding of the trial court should be sustained, if there be competent evidence to support the same.

■ It is further contended by the defendant in this court that, even though plaintiffs have title to the strips of land in question, such title is not a marketable one.

In this regard, it is the contention of the plaintiffs in this court that the defendant, having obtained possession of the strips of land in question by their agreement with plaintiffs, and still retaining the possession and the benefits of the contract, it is estopped to deny plaintiffs' title to the property.

No offer was made in the answer of defendant to reconvey or release the lease on the tracts in question, and no offer was made therein to restore the possession of the land to the plaintiffs; and no rescission was sought by such answer, or pleaded as a defense.

The evidence on the part of the defendant shows that on December 17, 1930, it returned two of the leases signed by the plaintiffs, each being accompanied by separate letters written to the plaintiff Frank P. Eckroat, stating that it did not accept this lease, for the reason that its attorneys did not approve title (R. pp. 202 to 215, and 216 to 228).

There is no evidence to show that certain other leases or contracts, signed by the plaintiffs, were ever returned to plaintiffs. These are as follows: Oil and gas lease, dated May 29, 1930, defendant's exhibit No. 1 (R. pp. 139 to 151); a supplemental contract relating to oil and gas leases, dated September 29, 1930, defendant's exhibit No. 13 (R. pp. 130 to 138), covering strip south of block 20; and a supplemental contract relating to oil and gas leases, dated September 29, 1930, defendant's exhibit No. 14 (R. pp. 239 to 247), covering strip south of block 19.

The evidence on the part of plaintiffs shows that, before the letters were written returning the two leases, defendant had taken possession of the two "drilling areas," which included the two strips in question, placed its machinery and equipment thereon, a part of which was located on the strips in question. The defendant by its answer admits that permits were secured from the city to drill an oil and gas well on each area, and that it drilled a well on the area which included block 19, and commenced to drill a well on the area which included block 20. The journal entry of an order entered October 20, 1930, shows that upon application of the plaintiffs, the defendant being represented at the hearing, the board of adjustment of the city of Oklahoma City attached the strip of land south of block 20 to said block 20 of Eckroat addition and block 1 of Schilling's addition, for participation in a one-eighth royalty in the ratio that the square foot area of said strip bore to the whole area of said strip and said blocks, in a well being drilled by the defendant (R. pp. 32 to 36). That on the day of trial, March 2, 1931, the defendant was in posses-

sion of the strips in question, and then had some tanks and pipe lines upon the same, and had a part of the strips under fence (testimony of Frank Eckroat, R. pp. 29 and 30; and testimony of Edward C. Haubach, R. pp. 109 and 110).

There are two general rules of law, one or the other of which is applicable to this case, depending upon whether the relation between the parties to the action is landlord and tenant, or that of vendor and purchaser. These two general rules are as follows:

First. A tenant cannot retain undisturbed possession of the demised premises and at the same time deny his landlord's title. Campbell v. Short, 65 Okla. 312, 166 P. 438; Miller v. Wood, 57 Okla. 172, 155 P. 1178; Larney v. Aldridge, 31 Okla. 447, 122 P. 151; and Welchi v. Johnson, 27 Okla. 518, 112 P. 989.

Second. A purchaser of real property cannot avoid payment of the purchase price of such property on the ground of want of title in his vendor, unless he restores or offers to restore the possession and reconvey the property to the vendor. Hooks v. Berry Hart Co., 135 Okla. 161, 274 P. 657; Pryor v. Furnish, 130 Okla. 40, 265 P. 110; Herron v. Harbour, 57 Okla. 71, 155 P. 506; and Carson v. Walker, 57 Okla. 182, 156 P. 1172.

These general rules are subject to certain exceptions, but, in the instant case, the facts do not bring the defendant within any of the exceptions.

The first of these general rules was before this court for consideration in the matter of an action to recover royalties alleged to be due under the terms of an oil and gas lease, in the case of Stem v. Kemp et al., 77 Okla. 101, 186 P. 946. The defense urged by the lessee and other defendants was that the title of the plaintiff, the lessor, had been extinguished during the tenancy. The grounds of defense being true, judgment was entered in the trial court for the defendants; and the judgment of the trial court was affirmed by this court. This case involved the exception to the said general rule, and this court held:

"While a tenant cannot dispute his landlord's title so long as it remains as it was at the time the tenancy commenced, he may show that such title has, during the tenancy, expired or been extinguished.

"Where a party entered into possession of a tract of land as lessee, * * * and during the tenancy the title of his lessor is extinquished by a valid judgment, the lessee is not estopped from asserting such extinguishment in an action thereafter commenced by his lessor for royalties agreed to be paid under the terms of the lease."

In the instant case, no change had taken place in plaintiffs' title after they had executed the oil and gas lease or contracts up to the time the action was commenced. The defendant entered into possession of the strips of land, and remained in the undisputed possession and actual beneficial enjoyment of plaintiffs' property, and was in such undisputed possession and in the actual beneficial enjoyment of the same at the time of the commencement of the action, and for that matter at the time of the trial.

In the case of MacDonald v. O'Neil, 21 Pa. Super. 364, the court held:

"A lessee in an oil lease will not be permitted during his possession and beneficial enjoyment of the leased premises, to allege in defense to an action for the stipulated rent that the lessor under whom he entered had not title at the time of his entry."

This was an action in assumpsit to recover rent or royalty accruing under a certain oil lease, brought by Earl V. MacDonald, administrator of Sarah Kramer, deceased, against William O'Neil. The lease had been executed by Sarah Kramer, the decedent, by an attorney in fact, to Edward O'Donnel and Howard Thompson. The interest of the lessees had been assigned, and at the time of the commencement of the action such interest was owned by the defendant, William O'Neil. The plaintiff's claim was for decedent's share of the royalty from date of assignment to the defendant to date of death of lessor. In bar of plaintiff's claim the defendant alleged that the land was sold for taxes to Watson and Freeman more than a year prior to the execution of the lease; that there was a failure to redeem within two years; that Watson and Freeman sold their tax title to S. P. Hall; that Hall transferred it to Wesley George and William O'Neil, the defendant, and that George transferred his interest to the defendant. In the opinion, the court said:

"In determining the question of the sufficiency of this defense, the following facts should be brought prominently into view: First, that the period for redemption had not expired at the date of the execution of the lease; second, that the deed from Hall and the deed from George, which the defendant now sets up as evidence of his absolute ownership of the fee, were both ex-

pressly made subject to the oil lease in question; third, that after the delivery of the deeds last mentioned he took an assignment of the leasehold estate. Furthermore, the only evidence bearing upon the question of possession is, that from August 27, 1894, the date of this assignment, to the date of the decedent's death, the oil produced under the lease was accounted for, and the value thereof paid, to the defendant by the pipe line company. There is no evidence of an entry by him, either actual or constructive, before that time—nothing to rebut the presumption arising from his acceptance of the assignment of the lease. On the contrary, the deeds under which he now claims aid the presumption that he entered, not in hostility to the lessor, but in affirmance of, and subjection to, her rights under the lease, and amongst them the right to demand and receive the rent, so long, at least, as he retained the possession acquired in that way. Even if these deeds had been admitted in evidence the case would still have been within the general rule that a person shall not be permitted, during his possession and beneficial enjoyment of the leased premises, to allege in defense to an action for the stipulated rent, that the landlord under whom he entered had not title at the time of his entry: Hamilton v. Pittock, 158 Pa. 457."

The defendant in the case before this court, having entered under its lease or contracts with the plaintiffs, and thus come into privity, that privity continues as long as its beneficial enjoyment of the demised property or right to it remains. This is manifest when it is considered what this privity of estate is; it is the actual or beneficial enjoyment of the premises, or the right of possession and enjoyment. And this court holds that a lessee in an oil and gas lease will not be permitted during his possession and beneficial enjoyment of the leased premises, to defend in an action to recover the cash price or bonus to be paid for such lease, on the ground that the lessor under whom he entered had no title at the time of his entry.

And this court is of the opinion that there is competent evidence to support the finding of the trial court that, by reason of the agreement between the plaintiffs and defendant set forth in the pleadings, plaintiffs are entitled to recover the sums prayed for.

█ A judgment rendered in an action at law, a jury having been waived, will not be reversed by this court where there is any competent evidence to support the same. Williams v. Swan, 144 Okla. 9, 291 P. 103; George P. Smith Oil Co. v. Travis Refining Co., 150 Okla. 279, 1 P. (2d) 746. This principle, expressed in different language, is so well established that further citation of authority is unnecessary.

After a review of the record in this case, there is, in the opinion of this court, competent evidence to support the judgment of the trial court, and the judgment of the trial court is affirmed.

The Supreme Court acknowledges the aid of Attorneys George L. Zink, Clayton Carder, and Finley McLaury in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Zink and approved by Mr. Carder and Mr. McLaury, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., and BAYLESS, BUSBY, PHELPS, and GIBSON, JJ., concur.